# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **SANDRA DEL-WISE, et al.** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **V.** | § | **C.A. NO. 4:10-cv-3330** |
| | § | |
| **TAXMASTERS, INC., et al.** | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION WITH SANDRA DEL-WISE AND TO STAY HER CLAIMS PENDING ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

TO THE HONORABLE LYNN HUGHES, U.S. DISTRICT JUDGE:

Come now, TaxMasters, Inc. ("TaxMasters"), TMIRS Enterprises, Ltd. ("TMIRS"), TM GP Services, LLC ("TM GP"), and Patrick R. Cox ("Cox") (hereinafter collectively referred to as the "Defendants"), and make this their Defendants' Motion to Compel Arbitration with Sandra Del-Wise and to Stay Her Claims Pending Arbitration and Memorandum of Law in Support thereof, pursuant to 9 U.S.C. § 1, et seq., and would show this Court as follows:

# I.

## Relief Requested

1.  The Defendants ask this Court to enter an order compelling arbitration of the claims of plaintiff Sandra Del-Wise and staying her claims in this case pending the arbitration.

# II.

## Reasons Why Relief Should Be Granted

2.  On September 19, 2008, plaintiff Sandra Del-Wise ("Del-Wise) entered into a contract for tax services with TMIRS. That contract contains a written arbitration provision compelling the parties to arbitrate any and all disputes and claims arising from the agreement and the services provided under the agreement. That arbitration agreement is enforceable under the Federal Arbitration Act.  9 U.S.C. § 2.

# III.

## Factual Background

### A. The Defendants and Their Business.

3.  In 2001, Cox formed TaxMasters as a sole proprietorship in Texas.  In January 9, 2004, TMIRS was formed as a Texas limited partnership which did business as TaxMasters. TM GP, wholly-owned by Patrick R. Cox, was also formed as a Texas limited liability company.  TM GP was the general partner of

TMIRS.  On April 6, 2009, TMIRS entered into a reverse merger with TaxMasters, pursuant to which TMIRS assigned to TaxMasters, a Nevada corporation, all of its assets in exchange for 100,000 shares of common stock of TaxMasters. TaxMasters is now a publicly traded corporation.

4. TaxMasters is a tax resolution company (as was TMIRS prior to its merger with TaxMasters) engaged in the business of assisting taxpayers with matters at the U.S. Internal Revenue Service (the "IRS"), especially the resolution of disputes and the assessment and settlement of tax liabilities.  TaxMasters' corporate and business offices are, and have always been, located in Houston, Texas. TMIRS and TaxMasters conducted sales of its services at all times from its Houston offices by telephone.  TaxMasters employs experienced tax professionals that work to help its clients solve their federal tax problems, ranging from filing delinquent tax returns to settling tax debts. The tax professionals employed by TaxMasters include tax attorneys, certified public accountants, former IRS agents, licensed tax preparers and other tax professionals who are authorized to practice before the IRS.

**B. The Plaintiffs and Their Relationships with the Defendants.**

5. There are two plaintiffs in this case: Del-Wise and Ralph J. Miller ("Miller").  This motion concerns only Del-Wise's claims, because Miller never

signed a written agreement with any of the defendants.[1]  On September 17, 2008, Del-Wise, a resident of Tacoma, Washington, telephoned TMIRS and requested tax services. Del-Wise owed a tax debt of at least $4,000.00 to the IRS from taking money out of her 401(k) plan without paying any withholding taxes on the funds. In addition, Del-Wise had not filed a federal income tax return for the tax years of 2005, 2006 and 2007. Del-Wise wanted to claim that her taxes were not collectible by the IRS because she was on disability for her medical condition with Lupus. Del-Wise agreed to pay a total sum of $2,550.00, payable by an initial downpayment of $750 and three monthly installments of $600.00.  TMIRS sent Del-Wise a contract for its services with those payment terms (Exhibit A), and Del-Wise signed and returned the contract on September 20, 2008 (Exhibit B).[2]

6.  In the agreement that Del-Wise entered into with TMIRS, Del-Wise paid to receive "settlement analysis" and preparation of federal income tax returns for the years 2005 – 2007.  The agreement described the services that TMIRS was to perform:

> The description below is agreed by Client and Firm to fairly represent the anticipated scope of the services between the two parties.
> 1. Settlement Analysis

---

[1] On February 19, 2010, after TMIRS' merger with TaxMasters, Miller, a resident of Fancy Gap, Virginia, called TaxMasters' toll free number, spoke with a TaxMasters representative, and paid a deposit for services with a credit card.  TaxMasters mailed a written agreement to Miller. By February 23, 2010, Miller was asking to cancel services and demanding a refund.  TaxMasters discussed the matter with Miller for several months.  TaxMasters reached an agreement with Miller under which it agreed to refund all of Miller's payments.  TaxMasters recently issued Miller his full refund as agreed.  Miller never signed and returned a written agreement to TaxMasters.

[2] The Installment Arrangement portion of the agreement was later modified. (Exhibit C).

o Firm will analyze Client financial data submitted in the form requested by Firm;

o Firm will prepare a draft form of the IRS Form 433-A or 433-B using the Client provided financial data. Additional fees will apply if both Form 433-A and 433-B are required by IRS;

o Firm will recommend to Client what Firm believes in its professional judgment to be the best alternative for Client of the various IRS programs including but not limited to Offer In Compromise, Partial Pay Installment Agreement, Installment Agreement, Uncollectible status, or such other alternatives as may be now or become in the future available from the IRS.

8. Income Tax Returns to File.

o Assumes W-2 only type return – maximum of 2 form W-2's. Additional charges will apply if number of W-2's is greater than 2 per tax return.

o Additional required schedules, statements, sub schedules, worksheets, or documents that are necessary to be submitted with the tax return to ensure a complete and accurate return are at an additional fee. Fees vary - begin at $5.00 and increase based on complexity of the schedule or other document. Current fee schedule in force at time of preparation will apply.

o Firm will advise Client of the fee adjustment, if any, after reviewing the final documents required to prepare the tax return completely and accurately. Firm may, at is sole discretion, begin completion of returns before advising client of any fee adjustments.

o Assumes no compilation, sorting, or analysis of records.

o Any re-runs of return due to omitted information, any organizing or gathering and sorting or records for Client, any unusual or required additional follow up contacts necessary to complete the return, and any other services required to prepare and gather documents to enable preparation of a complete and accurate return will be at additional cost.

o Client agrees to provide full and complete disclosure of all information deemed relevant by Firm in preparation of the

tax returns. Firm may suspend completion of tax returns until such full and complete disclosure is provided. Client is solely responsible for the effects of such a suspension should it become necessary.

(Exhibit A, pp. 4 - 5).  All of these services were to be performed by TMIRS' employees located in Houston, Texas.  The parties agreed to resolve any and all disputes arising out of the agreement or the services to be performed by TMIRS under the agreement in a binding arbitration.  (Exhibit A, pp. 7 - 8).

7.  Almost immediately TMIRS' staff began working on Del-Wise's taxes. On September 22, 2008, TMIRS assigned Del-Wise a case coordinator who spoke with Del-Wise about how her case would be handled. TMIRS sent a package to Del-Wise requesting financial documents in order to prepare a settlement analysis and to prepare her tax returns.  Del-Wise sent in those documents. TMIRS worked diligently on Del-Wise's delinquent returns throughout October, November, and December.

8.  At the beginning of January, 2009, Del-Wise called TMIRS complaining that her taxes were not done and demanding action. TMIRS continued its work on Del-Wise's returns in January, 2009.  Between January and May of 2009, TMIRS addressed with Del-Wise information that was missing from her financial questionnaire.  On May 28, 2009, a TMIRS representative called Del-Wise to ask for additional information that was missing, but Del-Wise did not answer. The representative left a message and emailed Del-Wise asking her to call. Del-Wise

did not respond to TMIRS' communications at all. On July 8, 2009, TMIRS sent Del-Wise a letter by certified mail asking her to call. Del-Wise still did not call. TMIRS continued to call Del-Wise throughout July of 2009 without success. TMIRS finished Del-Wise's returns for 2005-2007 and filed them with the IRS in August of 2009.

9. On August 27, 2009, a TMIRS representative emailed Del-Wise to inform her that her returns had been filed with the IRS. Del-Wise did not answer, so the representative left a detailed message. The next day, TMIRS' representative called Del-Wise again. Someone other than Del-Wise answered and told the representative that Del-Wise terminated TMIRS in January and did not want to speak with them.

10. On September 16, 2010, Del-Wise, a client who received her services then refused to communicate with TMIRS and filed Plaintiffs' Original Class Action Complaint and Suit for Declaratory Relief (the "Complaint") [Docket No. 1].   In the Complaint, Del-Wise raises class action claims against the Defendants for breach of contract, DTPA (under almost every state's law), and declaratory judgment.   All of these claims arise out of her agreement for tax services with TMIRS.

## IV.

## Argument and Authorities

### A. General Presumption in Favor of Arbitration under the FAA.

11. A written provision in a contract requesting arbitration of disputes arising out of the contract is valid, irrevocable, and enforceable, except upon such grounds that exist at law or in equity for the revocation of the contract. *See* 9 U.S.C. § 2. The arbitration agreement at issue is broadly written and clearly covers all of Del-Wise's claims. Section 3 of the Federal Arbitration Act provides that if a suit is brought, the court, after satisfying itself that the issue is covered by the arbitration agreement, "shall on application of one of the parties, stay the trial of the action" until the arbitration is completed. *See* 9 U.S.C. § 3. Section 4 of the Federal Arbitration Act provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. A valid agreement to arbitrate must be enforced. *Dean Witter Reynolds, Inc. vs. Byrd*, 470 U.S. 213 (1985).

12. The purpose of the Federal Arbitration Action (hereinafter the "FAA") "was to reverse the long-standing judicial hostility to arbitration agreements that had existed in English common law and had been adopted by American courts, and

to place arbitration agreements upon the same footing as other contracts." *Gilmore vs. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA's provisions "manifest a 'liberal federal policy favoring arbitration agreements'" and evidence the strong Federal policy in favor of voluntary commercial arbitration. *Id*. at 25 (quoting *Moses H. Cone Memorial Hospital vs. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)).

13.  Once the party requesting arbitration establishes that there is a written contract with a written arbitration agreement in it, a presumption of arbitrability arises requiring the court to decide any question of construction in favor of arbitration. The weight of the presumption in favor of arbitration is a heavy one, and arbitration should not be denied unless the court can determine with positive assurance that the arbitration clause is not subject to any interpretation that could cover the dispute at issue. *Mar-Len of Louisiana, Inc. vs. Parsons-Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985).

14.  A written arbitration agreement must be enforced under the FAA unless the party opposed to the arbitration "alleges and proves that the arbitration clause itself was a product of fraud, coercion, or 'such grounds as exist at law or in equity for the revocation of the contract.'" *Freudensprung vs. Offshore Tech Services, Inc.*, 379 F.3d 327, 341 (5th Cir. 2004). Courts should "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. vs. McMahon*, 482 U.S.

220, 226 (1987).  Unless the non-movant can prove one of the exceptions to arbitration, the district court has no discretion and must direct the parties to proceed to arbitration. *Dean Witter-Reynolds, Inc. vs. Byrd*, 470 U.S. 213, 218 (1985).

### B. Plaintiffs' Arguments Against Arbitration.

15.  Del-Wise has generally alleged in her complaint that the arbitration agreement is unconscionable and therefore void, and, alternatively, that she was fraudulently induced into the contract.[3]  With respect to unconscionability, Del-Wise has alleged that the arbitration agreement is substantively unconscionable on the grounds that: (1) it is cost prohibitive, (2) it contains a class waiver, and (3) it is illusory by only requiring Del-Wise to arbitrate and not TMIRS.  Del-Wise also argues, separate and apart from unconscionability, that she was fraudulently induced into the agreement.  Del-Wise seems to argue the fraud/misrepresentation defense as procedural unconscionability, but fraudulent inducement to contract is a contractual defense separate and distinct from procedural unconscionability.  *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 n. 8 (Tex. App. - Houston [14th Dist.] 2007, pet. denied).  The Plaintiffs' arguments are flawed, and the arbitration agreement is valid and enforceable.  This Court should enforce the agreement and compel Del-Wise to arbitrate her claims.

---

[3]  Of course, since Miller never signed a contract, this allegation must be meant to apply only to Del-Wise.

### C. Defenses to an Arbitration Provision in a Contract.

16. A party seeking to avoid arbitration must show that the case falls within a recognized exception to this general rule of enforceability of arbitration agreements under the Federal Arbitration Act, recognized by the United States Supreme Court:

> This language plainly intends to place arbitration clauses upon the same footing as all other contractual clauses. Thus, like any clause, an arbitration clause is enforceable, "save upon such grounds" as would suffice to invalidate any other, nonarbitration clause. The FAA thereby fulfills its policy of jettisoning the prior regime of hostility to arbitration. Like any other contractual clause, then, an arbitration clause may be invalid without violating the FAA if, for example, it is procured through fraud or forgery; there is mutual mistake or impossibility; the provision is unconscionable; or, as in this case, the terms of the clause are illegal under a separate federal statute which does not evidence a hostility to arbitration.

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 555-556, 115 S.Ct. 2322, 2337 (1995). As recognized by the U.S. Supreme Court in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, one of the grounds for holding an arbitration agreement unenforceable is unconscionability. *Id.* This is the only ground that Del-Wise has raised as a defense to the arbitration provision of the contract.

17. The court must look to applicable state law to determine if the arbitration agreement is unconscionable. *Galey vs. World Marketing*, 510 F.3d 529, 530 (5th Cir. 2007). Del-Wise and TMIRS are citizens of different states:

Del-Wise is a citizen of Washington and TMIRS is a citizen of Texas. Therefore, this Court must look to the law of conflict of laws to determine which state's law applies. The Court only analyzes the conflict of laws issue, however, if the law of these states conflicts. *Compaq Computer Corp. vs. LaPray*, 135 S.W.3D 657, 672 (Tex. 2004). Thus, this Court must first look at the law of Washington and Texas to determine if they conflict.

## D. <u>Law of Unconscionability under Texas and Washington Law Generally.</u>

18. The general statements of law under both Texas law and Washington law do not differ appreciably. Almost all consumer contracts are contracts of adhesion. Being a contract of adhesion alone, however, does not make the contract unenforceable under either Texas or Washington law. *Carter vs. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004); *In re Lyon Financial Services*, 257 S.W.3d 228, 233 (Tex. 2008); *In re Advance PCS Health, LP*, 172 S.W.3d 603, 608 (Tex. 2005); *Zuver v. Airtouch Communications, Inc.*, 153 Wn.2d 293, 304, 103 P.3d 753, 760 (Wash. 2004); *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002); *See In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 489 (Tex. 2001). The mere existence of unequal bargaining power does not make a contract unconscionable. *Zuver v. Airtouch Communications, Inc.*, 103 P.3d at 760.

19. Under both Texas and Washington law, there are two types of unconscionability: procedural and substantive. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006); *Zuver v. Airtouch Communications, Inc.*, 103 P.3d at 759. Under both Texas and Washington law, the party opposing arbitration bears the burden of proving unconscionability. *Scott v. Cingular Wireless*, 160 Wn.2d 843, 851, 161 P.3d 1000, 1005 (Wash. 2007); *In re FirstMerit Bank*, *N.A.*, 52 S.W.3d 749, 756 (Tex. 2001); *See Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. – Waco 2005, pet. denied)(stating under Texas law a party seeking to prove unconscionability of the contract bears burden of proving both procedural and substantive unconscionability); *Tri-Continental Leasing v. Law Office of Richard Burns*, 710 S.W.2d 604, 609 (Tex. App. -  Houston [1st Dist.] 1985, writ ref'd n.r.e.)(opinion on reh'g)( stating, in deciding the fairness of a contract's substantive terms, the court must also consider whether there were procedural abuses at the time the agreement was made).

20. Substantive unconscionability, under both Texas and Washington law, refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision. *Zuver v. Airtouch Communications, Inc.*, 103 P.3d at 759; *In re Halliburton Co.*, 80 S.W.3d 566, 581 (Tex. 2002). The test for substantive unconscionability is whether, "given the parties' general commercial background

and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001); *Zuver v. Airtouch Communications, Inc.*, 103 P.3d at 759.  "'Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (Wash. 1995)(*quoting Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention*, 16 Wn.App. 439, 444, 556 P.2d 552 (1976)).

21.  Texas cases state that procedural unconscionability relates to the actual making or inducement of the contract.  *In re Rangel*, 45 S.W.3d 783, 786 (Tex. App. – Waco 2001, orig. proc.).  This aspect of unconscionability focuses on the facts surrounding the bargaining process. *TMI, Inc. v. Brooks*, 225 783, 792 (Tex. App. – Houston [14th Dist.] 2007, pet. denied).  Washington cases describe procedural unconscionability in essentially the same terms, but in slightly different language.  Washington law defines procedural unconscionability as "the lack of a meaningful choice, considering all the circumstances surrounding the transaction including '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.'" *Nelson v. McGoldrick*, 127

Wn.2d at 131 (*quoting Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975)(*quoting Williams v. Walker-Thomas Furniture Co.*, 121 U.S. App. D.C. 315, 350 F.2d 445, 449 (D.C. Cir. 1965))).

22.  At this point in the analysis, Texas and Washington law do not differ. However, Texas courts and Washington courts have interpreted these general guidelines differently in some instances, leading to conflicts in the law of unconscionability.

    **E.  Analysis of Texas Law on Unconscionability.**

       **1. Whether the arbitration agreement makes arbitration cost prohibitive and if so, whether that makes the agreement unconscionable.**

23.  Del-Wise argues that her contract with TMIRS makes the arbitration process cost-prohibitive and thus substantively unconscionable. In support of this argument, Del-Wise: (1) points to the contract requiring costs to be borne by her, (2) states that "the economic realities of the contract preclude any viable recovery," and (3) states that the obligation to arbitrate is not mutual. (Complaint, p. 16, ¶47). Thus, Del-Wise must meet the test of substantive unconscionability and show that given the parties and their needs, the clause is so one-sided as to make it unconscionable and patently unfair.  Del-Wise fails to make this showing.  Under Texas law, the arbitration provision is not substantively unconscionable and would be enforced.

24.  One who "seeks to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive, bears the burden of showing the likelihood of incurring such costs." *Greentree Financial Corp. vs. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513 (2000).  A plaintiff's unsupported assertion of "high" costs and of the plaintiff's inability to pay them are "too speculative to justify the invalidation of an arbitration agreement." *Greentree Financial*, 531 at 90 n. 6, 91. Del-Wise pleads in her complaint that the costs of the arbitration would be approximately $8,175.00 (Complaint, p. 13, ¶37), but she offers no evidence and does not even suggest that those costs would be prohibitive to her.   Even if Del-Wise were able to meet this burden, this Court could simply sever the offending provision and order TaxMasters to pay all arbitration costs up front.  *See Carter vs. Countrywide Credit Industries*, 362 F.3d 294, 300 (5th Cir. 2004). *See also American Heritage Life Ins. Co. vs. Orr*, 294 F.3d 702, 711-712 (5th Cir. 2002).

25.  Del-Wise also makes a bald assertion that "economic realities of the contract preclude any viable recovery", but does not explain or offer any evidence to support this.  Del-Wise suggests in her complaint that because her arbitration costs will be $8,175.00 and her recoverable damages are only $3,050.00, the contract precludes a viable recovery. That argument is absurd. One would presume that Del-Wise would not have brought this lawsuit had she believed that there was

some economic reality that would preclude her from any recovery. Class certification is not a given regardless of whether the claims are subject to arbitration. There is nothing about arbitration as opposed to a court at law that precludes a viable recovery. There is nothing in the arbitration agreement that precludes a viable recovery. In fact, under Texas law, Del-Wise may seek to recover her attorney's fees and arbitration costs if successful.

26. Del-Wise also contends that the arbitration provision is illusory because it binds only her and not TMIRS. The language of the arbitration provision in the agreement clearly makes arbitration of all claims arising under the agreement the subject of arbitration whether brought by a customer or TMIRS. In her complaint, Del-Wise alleges that the arbitration provision merely states that TMIRS "may bring its claims in arbitration." This is a misstatement. The arbitration provision states "either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy." (Exhibit A, p. 8). The agreement simply states that either party may demand arbitration. The burden is not placed on any one party. The last provision of the arbitration agreement states that:

> Client and firm agree that all prior contracts and agreements between the parties of any kind and executed at any time prior to the date of this agreement shall, as part of this agreement, be deemed to be modified to include the arbitration terms of this agreement and to remove the litigation provisions as if all of the prior agreements or contracts originally contained these provisions." It is clear from this

last sentence that the parties intended for there to be no litigation in a court, and to submit all claims by either party to the arbitration process.

(Exhibit A, p. 8).   From this language, it is clear that the parties' intent, as construed from the four corners of the agreement, was to make sure that all claims brought by either party be submitted to arbitration and not be brought in a court at law.

### 2. Whether the class waiver provision makes the arbitration agreement unconscionable.

27.   The second grounds that Del-Wise raises in her attempt to circumvent the arbitration agreement is the fact that the agreement contains a class waiver provision.   However, the Fifth Circuit has consistently held that under Texas law, the existence of a class action waiver is not sufficient grounds to hold an arbitration provision unconscionable. *Carter vs. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *see also Iberia Credit Bureau, Inc. vs. Cingular Wireless, LLC*, 379 F.3d 159, 174 (5th Cir. 2004). In *Iberia Credit Bureau, Inc.*, the Fifth Circuit confronted the exact same argument that Del-Wise has raised here. The Fifth Circuit responded to it stating "while we do not discount the Plaintiffs' complaints, our calculus must also take into account that both Federal and Louisiana policy favor arbitration as a method of dispute resolution." *Iberia Credit* at 174 (Court pointing to recently decided Fifth Circuit case in *Carter vs. Countrywide Credit Industries, Inc.*).   Finally, any determination of the validity

of the class waiver provision is not for this Court but for the arbitrator to make. *Pedcor Management Company Welfare Benefit Plan vs. Nations Pers. of Texas, Inc.*, 343 F.3d 355 (5th Cir. 2003)(court interpreting opinion in *Greentree Financial Corporation vs. Bazzle* to require interpretation of the class waiver provision in the arbitration agreement by the arbitrator and not court).

28. In sum, Del-Wise has not met her burden to show that the contract's arbitration agreement is unconscionable. The contract is not so one-sided as to make it fundamentally unfair or unenforceable. There was nothing about the formation of the arbitration agreement that makes the agreement unenforceable. Under Texas law, the fact that the arbitration agreement contains a class waiver does not make the arbitration agreement unconscionable. The agreement would be valid and enforceable under Texas law.

### 3. Whether the arbitration agreement is mutual or illusory and if so, whether that makes the agreement unconscionable.

29. The last argument that Del-Wise makes is that the arbitration provision is illusory, because it only requires customers and not TMIRS to arbitrate claims. The arbitration agreement at issue clearly requires both parties to submit all disputes to arbitration and it is not one-sided and illusory. In order to determine whether the arbitration agreement binds only the consumer, this Court should construe the contract according to Texas law.

30. Under Texas law, a court's primary concern must be to ascertain the true intentions of the parties as expressed in the instrument. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-134 (Tex. 1994); *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). To achieve this objective, a court should examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the agreement so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 512, 243 S.W.2d 154, 158 (1951); *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex. 1965); *Pan Am. Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787 (1960). The contract must be interpreted within its four corners, *Houston Lighting & Power Co. v. Tenn-Tex Alloy Chemical Corp.*, 400 S.W.2d 296, 300 (Tex. 1966), and the contract must be considered as a whole. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). Moreover, each part of the contract should be given effect. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987). The Texas Supreme Court established long ago the rule that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121

S.W.2d 579, 583 (1938);  *See also*, *Wynnewood State Bank v. Embrey*, 451 S.W.2d 930, 932 (Tex.Civ.App. - Dallas 1970, writ ref'd n.r.e.).

31. Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless.  *See Ogden v. Dickinson State Bank,* 662 S.W.2d 330 (Tex. 1983); *Portland Gasoline Co. v. Superior Marketing Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (1951).  Court must construe contracts "from a utilitarian standpoint bearing in mind the particular business activity sought to be served and should not embrace strained rules of interpretation which would avoid ambiguity at all costs.  *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527,530 (Tex. 1987); *Neece v. AAA Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 602 (1959).   A Court should avoid a construction which creates results that are unreasonable, inequitable or oppressive. *Reilly v. Rangers Management, Inc.*, *Id.*

32. The arbitration agreement is found within the contract (attached as Exhibit A) on page 8.  It reads in full as follows:

> Arbitration Agreement:
> - Client agrees that any and all claims, demands, disputes, or controversies of any kind or nature that client has concerning any of the negotiations leading to the purchase of the services, terms and provisions of the sale, engagement agreement, arrangements of payment, purchase of service contracts, the performance of the engagement agreement or services, or any other aspect of the services from Firm shall be settled by binding arbitration conducted pursuant to the provisions of Title 9 of the United States Code Chapter 1 et

seq. and according to the rules of the American Arbitration Association.

- Client agrees, covenants, and contracts that there shall be no class arbitration between the parties and the only parties to any disputes or controversies to be arbitrated as more particularly described herein shall be the Client and the Firm.

- **Either party may demand arbitration** by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The Client agrees that the arbitration proceedings to resolve all such disputes shall be conducted in Houston, Harris County, Texas. Client agrees to bear all costs of arbitration. Client agrees to keep confidential the results, decisions, and conversations and all communications in connection with the arbitration proceedings and/or Arbitration Agreement. Firm may seek damages and/or Injunction against the Client for any violations of the confidentiality requirements set forth above.

- **Client and Firm agree that all prior contracts and agreements between the parties of any kind and executed at any time prior to the date of this agreement shall, as part of the agreement, be deemed to be modified to include and adopt the arbitration terms of this agreement and to remove the litigation provisions** as if all of the prior agreements or contracts originally contained these provisions.

(Exhibit A, p. 8)(emphasis added). Reading all of these bullet pointed provisions together in a utilitarian fashion to make sense of them, it is clear that the arbitration agreement binds both parties and requires non-class arbitration of any and all claims and disputes that arise between the parties.

33. The cases that Del-Wise cites in her complaint in support of her allegation that the arbitration agreement is illusory do not stand for the proposition that she cites them for. *Morrison vs. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008) and *J.M. Davidson, Inc. vs. Webster*, 128 S.W.3d 223 (Tex. 2003) both deal with arbitration provisions and employment agreements in which the employers retained the right to unilaterally abolish or modify the employment agreement.  In *Morrison vs. Amway Corp.*, the Fifth Circuit held that where the employer had the right to unilaterally abolish or modify the arbitration program, the program was essentially illusory and not binding. 517 F.2d at 255 – 256.   In *J.M. Davidson, Inc. vs. Webster*, the Texas Supreme Court held a clause in an employment agreement stating "the 'Company' reserves the  right to unilaterally abolish or modify any personnel policy without prior notice" was ambiguous and the Court remanded the case to the trial court to determine what the parties intended.   128 S.W.3d at 230. There is no such provision in the arbitration provision at issue with TMIRS.  Under the written agreement with Del-Wise, TMIRS does not have the right to unilaterally abolish or modify the arbitration provision.  The cases cited by Del-Wise are simply not on point. The arbitration provision is not illusory and under Texas law would be enforced.

**F.  Analysis of Washington Law on Unconscionability.**

**1.  Whether the arbitration agreement makes arbitration cost prohibitive and if so, whether that makes the agreement unconscionable.**

34.  As discussed in section E.1. above, Del-Wise argues that her contract with TMIRS makes the arbitration process cost-prohibitive. Thus, Del-Wise must meet the test of substantive unconscionability under Washington law and show that the contract is so one-sided, so 'shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused', that it is fundamentally unfair.  Under Washington law, the cost/fee provisions of the arbitration agreement would not be substantively unconscionable and would lead to the arbitration agreement being enforced.

35.  The burden of proof on this issue is the same under Washington law as it is under Texas law.  The U.S. Supreme Court has opined in *Greentree Financial Corp. vs. Randolph* that one who "seeks to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive, bears the burden of showing the likelihood of incurring such costs." 531 U.S. 79, 92, 121 S.Ct. 513 (2000).  A Plaintiff's unsupported assertion of "high" costs and of the Plaintiff's inability to pay them are "too speculative to justify the invalidation of an arbitration agreement." *Greentree Financial*, 531 at 90 n. 6, 91.  The Washington Supreme Court, in *Zuver*, refined this burden of proof in *Greentree*, stating "[o]nce

prohibitive costs are established, the opposing party must present contrary offsetting evidence to enforce arbitration." *Zuver*, 103 P.3d at 762 (*quoting Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 470, 45 P.3d 594 (2002)). Such evidence may include an offer to "defray the cost of arbitration pending the outcome." *Palm Harbor Homes*, 111 Wn. App. At 470. Where the party seeking to enforce arbitration makes this offer, the issue becomes moot. *Zuver*, 103 P.3d at 763.

36. The Plaintiffs have not met their burden of showing evidence of an inability to pay the costs of arbitration. Moreover, the issue is moot.

### 2. Whether the class waiver provision makes the arbitration agreement unconscionable.

37. Del-Wise's claim that the class waiver provision in the arbitration agreement makes the agreement unconscionable presents a conflict between Texas and Washington law. Under Texas law, a class waiver provision does not make the arbitration agreement unconscionable. Under Washington law it does. In *Scott v. Cingular Wireless*, 160 Wn.2d 843, 854, 161 P.3d 1000, 1006 (Wash. 2007), the Washington Supreme Court held that because class actions serve an important purpose in Washington's public policy, a class action waiver in an arbitration agreement is unconscionable. This presents a difference between Texas and Washington law on this issue of substantive unconscionability.

### 3. Whether the arbitration agreement is mutual or illusory and if so, whether that makes the agreement unconscionable.

38. Del-Wise's claim that the arbitration clause is illusory because it only requires her and not TMIRS to arbitrate claims should not have a different result under Washington law. TMIRS will argue that the agreement should be construed to require both parties to submit all disputes to arbitration. Although Ninth Circuit cases have certainly treated agreements reading like the agreement at issue very harshly and found agreements unconscionable, the Washington Supreme Court has found differently. Further, Washington's law of contract construction should lead to the same result as Texas law.

39. In *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173 (9th Cir. 2003), the Ninth Circuit held that an agreement that requires arbitration of only an employee's claims against the employer (and not the employer's claims against the employee) is substantive unconscionable under California law:

> Circuit City's arbitration agreement applies only to "any and all employment-related legal disputes, controversies or claims of an Associate," thereby limiting its coverage to claims brought by employees. By the terms of this agreement, Circuit City does not agree to submit to arbitration claims it might hypothetically bring against employees. Without a reasonable justification for such a glaring disparity based on "business realities," "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the

employee." *Armendariz, 6 P.3d at 692, 24 Cal. 4th at 117*; *see Cal. Civ. Code § 1670.5(b)*. Therefore, as we held in *Adams III*, this "unjustified one-sidedness deprives the [arbitration agreement] of the 'modicum of bilaterality' that the California Supreme Court requires for contracts to be enforceable under California law." *Adams III, 279 F.3d at 894*; *Armendariz, 6 P.3d at 692, 24 Cal. 4th at 117*.

In *Al-Safin v. Circuit City Stores, Inc.*, the Ninth Circuit interpreted Washington law as holding the same as California law.  394 F.3d 1254, 1261 (9th Cir. 2005)(*quoting Adler v. Fred Lind Manor*, 153 Wn.2d 331, 103 P.3d 773, (Wash. 2004) as citing the *Ingle* case and saying "we agree with the Ninth Circuit").

40.  The Ninth Circuit's interpretation of Washington law in this respect is shaky at best and its statement that the Washington Supreme Court stated in *Adler* "we agree with the Ninth Circuit" is mystical.[4]  In *Adler v. Fred Lind Manor,* the case that the Ninth Circuit ultimately relied on, the Washington Supreme Court dealt with an arbitration agreement that read almost identical to the one at issue in *Al-Safin v. Circuit City Stores, Inc.*, and almost identical to the one at issue in this case.  *Adler*, 103P.3d at 778.  The Court construed the language of the contract in order to determine whether it required only arbitration of the employee's claims against the employer or required arbitration of all claims of the parties against each other.  The Court pointed out that Washington courts employ the "context rule" of contract construction.  *Adler* at 784 (citing, *Berg v. Hudesman*, 115 Wn.2d 657,

---

[4] In *Adler*, the Court agreed with the Ninth Circuit's holding in *Ingle* that "limiting the period of time in which its employees may bring discrimination claims" to one year is unconscionable.

667, 801 P.2d 222 (1990)). The "context rule" requires the court to determine the intent of the parties by viewing the contract as a whole. *Adler*, 103 P.3d at 784. The court must consider "the subject matter and intent of the contract, examination of the circumstances surrounding its formation, subsequent acts and conduct of the parties, the reasonableness of the respective interpretations advanced by the parties, and statements made by the parties during preliminary negotiations, trade usage, and/or course of dealing." *Id.* at 785 (*citing* 25 David K. Dewolf & Keller W. Allen, Washington Practice, Contract Law And Practice, § 5.5 (1998)). In analyzing the facts and the language of the contract, the Court stated:

> The text of the agreement here, as well as the parties' statements and conduct, support Fred Lind Manor's claim that the agreement also requires it to arbitrate its disputes against employees. First, at the time the arbitration agreements were executed, then-manager Serold informed employees that the arbitration agreement reflected management's policy that all employment disputes, 'whether by employer or an employee,' be subject to binding arbitration instead of a lawsuit in court. CP at 39-40. Serold also indisputably acted in her role as Fred Lind Manor's representative when she signed Adler's and other employees' agreements on Fred Lind Manor's behalf. [10] *Id.* Most importantly, the agreement provides, "[t]he *aggrieved party* must deliver to the other party a written notice of *his/her/its* intention to seek arbitration …. Otherwise *his/her/its rights* shall be irrevocably waived." CP at 22 (emphasis added). This provision does not single out individual employees' disputes against Fred Lind Manor. Rather, it refers generically to the "aggrieved party," and, by use of the words "his/her/its," clearly contemplates suits brought by Fred Lind Manor against its employees. CP at 22. Thus, we reject Adler's argument that this arbitration agreement applies unilaterally.

*Adler*, 103 P.3d at 785. Thus, the Washington Supreme Court in *Adler*, construing

the contract in light of all of the circumstances surrounding its formation, held that the arbitration agreement applied unilaterally and was not unconscionable. Washington law should not present a difference from Texas law on this point, and the arbitration agreement in this case should be enforceable under Washington law.

### G. Conflict of Laws Analysis:   Does Washington law or Texas law Apply?

41. The analysis above shows that on almost all points, there is no difference between Washington and Texas law.  Nevertheless, there is one point on which the laws differ: whether a class waiver provision in the arbitration agreement makes the agreement unconscionable.  For this reason and this reason alone, this Court must look at the conflict of laws rules of the forum state of Texas to determine which states' law should apply.

42. Texas law looks to the Restatement (Second) of Conflict of Laws. Where the contract at issue has a choice of law provision, the court looks at Section 187 of the Restatement.  Where the contract does not contain a choice of law provision, the court looks at Section 188 of the Restatement. *Sonat Exploration Company vs. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (2008); *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex. 1991).  Restatement section 188 provides that "an issue in contract [is] determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties."  Restatement (Second)

of Conflict of Laws, § 188(1).  Section 188 lists five contacts to be taken account:

(a) the place of contracting, (b) the place of negotiation, (c) the place of

performance, (d) the location of the subject matter, and (e) the domicile, place of

incorporation, and place of business of the parties. Restatement (Second) of

Conflict of Laws, § 188(2).   "Neither the place of contracting nor the place of

negotiation is significant when (as occurred here) the parties conduct both from

offices in different states."   *Sonat Exploration Company vs. Cudd Pressure*

*Control, Inc.*, 271 S.W.3d at 233, *see* Restatement (Second) of Conflict of Laws,

§ 188 cmt. e.  ("Standing alone, the place of contracting is a relatively insignificant

contact." ... "The place where the parties negotiate . . . is of less importance when

there is no one single place of negotiation and agreement, as, for example, when

the parties do not meet but rather conduct their negotiations from separate states by

mail or telephone.").

43. In *Maxus Exploration Company vs. Cudd Pressure Control, Inc.*, the

Texas Supreme Court held that section 196 of the Restatement (Second) of

Conflict of Laws makes the place of performance of "paramount importance" with

respect to service contracts. 817 S.W.2d 50, 53 (Tex. 1991).[5]  There is no question

---

[5] Section 196 applies only to service contracts involving a single state; it does not apply to contracts like this one
contemplating services in many states:

> The rule [of *section 196*] applies if the major portion of the services called for by the contract *is to
> be rendered in a single state and it is possible to identify this state at the time the contract is made.*
> It is necessary that the contract should state where the major portion of the services is to be
> rendered or that this place can be inferred either from the contract's terms or from the nature of the

that all of the services that Del-Wise contracted for were to be performed in Houston, Texas. The agreement that Del-Wise signed expressly states that TMIRS is in Houston, Texas (Exhibit A, p. 9).  Since Del-Wise was paying for settlement analysis and tax return preparation, it was clear that the parties intended those services to be provided by TMIRS in its Houston offices.

44. This all leads to the conclusion that Texas law should apply to the determination of whether the arbitration agreement is unconscionable.   Under Texas law, the arbitration agreement at issue in this case is valid and enforceable.

### H.  <u>Fraud/Misrepresentation to Procure Agreement Does Not Apply.</u>

45. The last unconscionability argument that Del-Wise makes is that the contract was procured by misrepresentation or concealment and therefore the arbitration provision is procedurally unconscionable. It is interesting that Del-Wise raises this argument, but fails to make any fraudulent inducement to contract claim in her complaint.  In order to meet the fraud or fraudulent inducement exception to arbitration, a party must establish fraudulent inducement by showing the elements of a common law fraud claim.  *Vimar Seguros y Reaseguros, S.A. vs. M/V Sky Reefer*, 515 U.S. 528, 555-556, 115 S.Ct. 2322, 2337 (1995).   The elements of fraud and fraudulent inducement applicable here are: (1) a material representation,

---

services involved or from other circumstances. For this reason, *the rule of this Section is unlikely to aid in the determination of the law . . . when the work called for by the contract can be done in any one of two or more states.*

Restatement (Second) of Conflict of Laws, § 196 cmt. a (1971) (emphasis added).

(2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *See Balogh vs. Ramos*, 978 S.W.2d 696, 701 (Tex. App. -- Corpus Christi 1998, pet. denied). Del-Wise bears a heavy burden of proving fraudulent inducement to contract, which she has not done.

46. However, a showing of fraudulent inducement into the overall contract is not sufficient to invalidate an arbitration provision. The party seeking to avoid arbitration must show that it was fraudulently induced into the arbitration agreement itself. *Buckeye Check Cashing, Inc. vs. Cardegna*, 546 U.S. 440, 444 (2006); *Prima Paint Corp. vs. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967). Del-Wise has made no argument at all that she was fraudulently induced into the arbitration agreement itself. She only argues that she was fraudulently induced into entering into the overall tax services agreement. As such, Del-Wise has not presented a valid procedural unconscionability argument. The arbitration agreement is valid and enforceable and this Court should compel arbitration.

47. Further, although a determination of the validity of the arbitration agreement itself is for this Court and not an arbitrator, a determination of the validity of the contract itself is for the arbitrator. *Buckeye Check Cashing, Inc. vs. Cardegna*, 546 U.S. 440, 444 (2006); *Prima Paint Corp. vs. Flood and Conklin*

*Mfg. Co.*, 388 U.S. 395, 403-404 (1967).  Since Del-Wise only contends that she was fraudulently induced into the overall agreement, an arbitrator must determine the issue.

## V.

### Conclusion

48. In this case, there is a written arbitration provision in the agreement between Del-Wise and TMIRS. There is a strong federal policy in favor of arbitration. The FAA applies to this case. Del-Wise has shown no exception to arbitration under Texas law, which is the law that applies to any defenses to arbitration. Therefore, this Court should enter an order compelling arbitration of Del-Wise's claims against the Defendants and stay her claims in this Court pending arbitration.

WHEREFORE, PREMISES CONSIDERED, the Defendants, TaxMasters, Inc., TMIRS Enterprises, Ltd., TM GP Services, LLC, and Patrick R. Cox respectfully request that this Court grant Defendants' Motion to Compel Arbitration with Sandra Del-Wise and to Stay Her Claims Pending Arbitration, and enter an order compelling arbitration of the claims of Sandra Del-Wise and staying the action with respect to her claims pending arbitration.

**WAUSON ♦ PROBUS**

By: _____/s/ Matthew B. Probus__

      **Matthew B. Probus**
      State Bar No. 16341200
      Fed. I.D. No. 10915
      **John Wesley Wauson**
      State Bar No. 20988200
      Fed. I.D. No. 1866

Comerica Bank Building
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 (Telephone)
(281) 242-0306 (Facsimile)

*ATTORNEYS FOR DEFENDANTS,*
*TAXMASTERS, INC., TMIRS*
*ENTERPRISES, LTD., TM GP SERVICES,*
*LLC and PATRICK R. COX*

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 2, 2010, I conferred with counsel for the Plaintiffs, Mark Wham, and he stated that he is opposed to this motion.

        _____/s/ Matthew B. Probus__
        Matthew B. Probus

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been forwarded by U.S. Certified Mail return receipt requested and by electronic means to attorney for Plaintiffs on this 3rd day of November, 2010, as follows:

Mark Wham

The Spencer Law Firm

Executive Plaza West

4635 Southwest Freeway, Suite 900

Houston, Texas 77027

markwham@spencer-law.com

          ___/s/  Matthew B. Probus _____

          Matthew B. Probus