IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANDRA DELL-WISE and | § | |
| RALPH J. MILLER, | § | |
| *on behalf of themselves, and all others* | § | |
| *similarly situated* | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO.4:10-cv-03330 |
| vs. | § | |
| | § | JURY |
| TAXMASTERS, INC. | § | |
| TMIRS ENTERPRISES, LTD, | § | |
| TM GP SERVICES, LLC, | § | |
| and PATRICK R. COX, | § | |
| Defendants. | § | |

**PLAINTIFFS' FIRST AMENDED ORIGINAL CLASS ACTION COMPLAINT AND
SUIT FOR DECLARATORY RELIEF**

TO THE HONORABLE JUDGE OF THIS COURT:

1.     Plaintiffs, SANDRA DELL-WISE, RALPH J. MILLER, AND PATRICK

MCKENNA, on behalf of themselves and all others similarly situated, files this, their First

Amended Original Class Action Complaint and Suit for Declaratory Relief, complaining of the

conduct of TAXMASTERS INC., TMIRS ENTERPRISES, LTD, TM GP SERVICES, LLC, and

PATRICK R. COX (collectively, "Defendants"), respectfully showing the court as follows:

### I. PARTIES

2.     Plaintiff, SANDRA DELL-WISE ("Dell-Wise")[1] is an individual residing in

Tacoma, Washington.  Wise asserts claims on behalf of herself and all others similarly situated.

---

[1] This amendment corrects a typographical error in the style of this case.

3.      Plaintiff RALPH J. MILLER ("Miller") is an individual living in Fancy Gap, Virginia.  Miller asserts claims on behalf of himself and all others similarly situated.

4.      Plaintiff Patrick McKenna (McKenna) is a an individual residing in Wauwatosa, Wisconsin.  McKenna asserts claims on behalf of himself and all others similarly situated.[2]

5.      Defendant, TAXMASTERS, INC. ("TaxMasters"), is a corporation, incorporated under the laws of Nevada, and is currently doing business in Houston, Harris County, Texas and throughout the United States.  TAXMASTERS, INC. also operates under Texas registered assumed names Texas TaxMasters, Inc., and TAXMASTERS.   TaxMasters has appeared through counsel.

6.      Defendant, TMIRS ENTERPRISES, LTD, is a Texas limited partnership doing business in Harris County Texas and throughout the United States.  TMIRS ENTERPRISES, LTD has appeared through counsel.

7.      Defendant, TM GP SERVICES, LLC ("TM GP"), is a Texas limited liability company doing business in Houston, Harris County, Texas and throughout the United States. TM GP Services, LLC has appeared through counsel.

8.      Defendant PATRICK R. COX ("Cox") is the manager and sole member of TM GP Services, LLC, and founder and President of TMIRS.   Cox is the Director and Chief Executive of TAXMASTERS, INC., and Cox is the registrant of TaxMasters' website.  Cox is an individual living in Houston, Harris County, Texas and has appeared through counsel.

## II. JURISDICTION AND VENUE

[2] Neither the putative classes nor the cause of action is changed by this amended complaint, nor by the adding of McKenna as a plaintiff – the original plaintiffs have and continue to have valid claims, as members of the putative classes originally proposed.  Both the original named plaintiffs and the putative classes they represented continue to have a stake in the outcome of the same controversy.

9.    This Court has Jurisdiction over all causes of action asserted herein because (1) the class of plaintiffs would exceed 100 persons, (2) at least one member of the class is diverse in citizenship from at least one of the defendants, and (3) the aggregate quantum of damages suffered by members of the plaintiff class exceeds five million dollars (exclusive of interest or costs).  *See* 28 U.S.C. § 1332(d)(2) and (5)(B). Venue is proper in this district under, but not limited to, 28 U.S.C. 1391(a)(2) because substantial parts of the events or omission give rise to the claim occurred in this district, and/or under §§(a)(3) because at least one defendant is subject to the personal jurisdiction of this Court.

### III. PRELIMINARY STATEMENT

10.    This action seeks class certification on a nationwide basis.  This class action is brought by Plaintiffs seeking damages on their behalf and on behalf of all others similarly situated in the United States who entered into contracts with TaxMasters for services based on TaxMasters' explicit and implicit misrepresentations.  Plaintiffs, on their behalf and on behalf of all others similarly situated in the United States, seek: (a) a declaration that the damages limitation scheme located at page eight of TaxMasters' contract is void, in its entirety,  on the grounds that it is both substantively and procedurally unconscionable; and (b) damages for TaxMasters' violation of consumer protection statutes and breach of contract.

### IV. OVERVIEW OF RELIEF SOUGHT

**A.    DECLARATORY RELIEF**

11.    TaxMasters' contract has a damages limitations scheme that should be stricken. The damages limitations scheme renders the contract unconscionable and legally unenforceable.

This scheme operates to deny TaxMasters' customers any viable remedy.  In addition to requiring arbitration, the contract contains a damage limitation scheme which purports to:

> (a)  shift all costs of litigation, including all arbitration fees, to the customer;
>
> (b)  bar any recovery in excess of the amount actually paid to TaxMasters;
>
> (c)  preclude (by the limitations on recovery) reimbursement of attorneys' fees;
>
> (d)  preclude class arbitration (thereby eliminating the possibility of a viable claim; and
>
> (e)  unconsciously require only the consumer, and not TaxMasters, to arbitrate.

12.    The damage limitation scheme denies any viable means of redress to TaxMasters' customers. The economic reality is that pursuing a claim brought under the contract, as written, would cost far more to the customer than what he could ever recover.  Additionally, the contract violates the provisions of the Texas Deceptive Trade Practices – Consumer Protection Act (hereinafter, "the Texas DTPA") – specifically, the limitations on damages, class relief, and attorney's fees.

13.    TaxMasters' damages limitation scheme is both procedurally and substantively unconscionable because it acts as a de facto exculpatory clause.  Plaintiffs avail themselves of the Federal Declaratory Judgment Act, along with this Court's equitable powers, to strike the contract's damages limitation scheme and to allow this action to proceed, pursuant to the Texas DTPA, so that class certification may be sought herein.

**B.    CLASS RELIEF**

14.    Plaintiffs seek damages on  behalf of themselves and all others similarly situated in the United States who have sustained damages as a proximate result of having entered into

contracts with TaxMasters for services based on TaxMasters' explicit and implicit misrepresentations. Plaintiffs also seek declaratory relief under the contract and statutory principals set forth below.

## V. STATEMENT OF FACTS AND NATURE OF THE CASE

### THE PROBLEM

15.     TaxMasters advertises on television commercials in Texas and across the country, inviting customers to "solve their tax problems" by calling TaxMasters' toll-free telephone number for a "free consultation" with a "tax consultant." In fact, customers who accept the invitation and call TaxMasters are connected to a telephone sales representative who proposes a solution to the customers' tax problems, and then closes the deal by obtaining the customers' credit card or bank account number without providing to the customers several material disclosures, including that the fees paid by the customers will be "non-refundable."

16.     In this initial sales call, TaxMasters' representatives misrepresent and fail to disclose important aspects of TaxMasters' service and the terms on which they are offered, including, as indicated above, the fact that TaxMasters treats all fees paid as non-refundable, and the fact that TaxMasters will not begin working on a client's case until she has paid all of the installment payments agreed to. The latter misrepresentation results in TaxMasters' clients, who have been told that retaining TaxMasters will "solve their tax problems," and avoid missing IRS deadlines and otherwise prejudicing their tax cases.

17.     Defendants operate what they describe as a "tax resolution" firm, aimed at the market of taxpayers who have received an audit notice, a notice of tax deficiency, or are otherwise in some difficulty with the IRS. Essentially, TaxMasters offers to act as the taxpayer's agent in his dealings with the IRS. According to TaxMasters, it provides the following tax-

related services, among others: (a) stopping IRS wage garnishments; (b) stopping IRS property seizures; (c) assistance with paying back taxes; and (d) settlement of customers' tax debts by reducing the amount of interest and penalties.

18.    The image and words of Patrick R. Cox, the President and Chief Executive Officer of TaxMasters, Inc., appear in the numerous TaxMasters television commercials and on the TaxMasters website, where he introduces himself as the founder of TaxMasters. He represents that TaxMasters will "get between" the IRS and the consumer, and will solve the consumer's tax problems. He says that former IRS agents and other tax professionals are standing by to assist the customers with their tax problems.

19.    TaxMasters runs commercials which air frequently on network and cable television, including MSNBC, CNN and Fox News, and on the internet. Customers who call the toll free number featured in TaxMasters' advertisement are connected with an inside salesperson who, unbeknownst to the customer, is not required to have any "previous tax knowledge," as a condition of employment, but is encouraged to have "a firm understanding of the sales process." During the sales pitch, the salesperson presents the caller with a solution to his tax problem and quotes a fee, which can run into thousands of dollars. This fee is generally presented as a flat fee.

20.    During the "free consultation" call (which is the initial call between a consumer and TaxMasters) the "tax consultants" work to "close the sale" by obtaining a credit card number or bank account number from the consumer, so that TaxMasters can collect its fee. To this end, TaxMasters' sales personnel emphasize the necessity of retaining TaxMasters right away in order to "solve" the consumer's tax problem. If the consumer asks to receive a written description of the services prior to agreeing to purchase, the salesperson refuses, telling the consumer that it is

not possible to "generate" the documents without first inputting a payment method into the TaxMasters system.

21.     The fees that TaxMasters charges for its services are large, typically ranging from $1,500.00 to $9,000.00 or even more. If the consumer cannot afford to pay the fee in whole, or if the consumer balks at agreeing to pay such a large amount without seeing written terms, the "tax consultant" offers the consumer an installment plan to pay the TaxMasters fee. The consumer is usually required to agree to a down payment of at least $500.00, or 25% of the total fee, whichever is greater.

22.     The "tax consultation" is concluded when the consumer agrees to retain TaxMasters and to make payment in full or payment via an installment plan.  The "tax consultant" then turns the consumer over to another member of the TaxMasters sales team, the "verifier," who tells the consumer what a good decision he has made and reviews the payment plan to which the consumer has agreed. Neither the original consultant nor the "verifier" discloses to the consumer that it is TaxMasters' position that the consumer is now irrevocably bound to pay the initial fee and any future installments before the consumer has signed any written engagement letter or received any services from TaxMasters.

23.     After the call is ended, and before TaxMasters sends the consumer any written materials, TaxMasters charges the consumer's credit card, or debits the consumer's bank account, for the amount of the whole fee or down payment.  It then sends a letter to the consumer, along with IRS forms appointing TaxMasters as the customers' agent, an "engagement agreement," and an "engagement guide."  The letter instructs the consumer to sign the engagement agreement and IRS forms and return them to TaxMasters.

24.    The engagement agreement is a nine page document that contains numerous previously undisclosed terms and conditions printed in small type. These previously undisclosed terms and conditions materially and substantively limit and change the services as described by TaxMasters during the sales call with the consumer. [Exhibit A is a sample copy of the engagement agreement]. Plaintiffs incorporate all their prior exhibits.

25.    One of the terms disclosed for the very first time in the engagement agreement involves the cancellation of the agreement by the consumer and the consumer's right to receive a refund. This disclosure reads as follows:

**Client's Early Termination Agreement**

Client may terminate this agreement at Client's discretion by providing Client's notice in writing to Firm. In the event of termination by client, the minimum professional fees due for services rendered or to be rendered will be the higher figure of: (1) the minimum total retainer specified above and the actual fee for any other services performed - or- (2) the actual time expended by Firm at standard billing rates. If Client has paid more than the minimum fee as determined herein, a refund will be paid. Client agrees to remit any balance in full with its termination notice or to permit any remaining balance to be drafted in full using the payment method established in the installment agreement.

Besides the fact that this paragraph is imbedded in small print in the engagement agreement and is not clearly and conspicuously disclosed, the disclosure is deceptive and confusing, as it appears to say that the consumer may be entitled to a refund. However, it is TaxMasters' practice to breach this promise, as well.

26.    TaxMasters not only refuses to refund the fees already collected by it after the sales call, it also attempts to continue to collect fees from customers who refuse to sign the written contract sent to the customer after TaxMasters obtains the initial over-the-telephone payment, and from customers who cancel their agreements due to TaxMasters' failure to perform as promised. In fact, the Defendants threaten to subject customers to collection procedures if

they refuse to pay fees after the consumer has cancelled the agreement.  In attempting to collect these fees, TaxMasters threatens to bring suit to collect such fees in Harris County, Texas, even though the consumer is not a resident of Harris County and did not sign the contract on which the alleged debt is based in Harris County.

27.     In addition to its failure to disclose numerous material terms to the consumer prior to attempting to bind the consumer with those terms, TaxMasters' regular business practice is to make affirmative representations on its website and during the sales call that contradict those undisclosed terms and conditions.  During the sales call, the TaxMasters salesperson presents the consumer with a fee amount for resolving the consumer's tax issue.  The engagement agreement sent later includes terms that state that the fee quoted to the consumer is not in fact the fee required by TaxMasters to resolve the consumer's tax problem, but only the *minimum* fee.  According to the engagement agreement, the TaxMasters fee may be far larger than that quoted on the sales call.

28.     On its website and during the sales call, TaxMasters' regular business practice is to represent that it will begin working on the consumer's tax problem as soon as the consumer provides the credit card or bank account drafting information to TaxMasters. According to the terms of the TaxMasters engagement agreement, however, TaxMasters is not "required" to begin working on the consumer's tax problem until the consumer has paid the TaxMasters fee in full. Therefore, when an installment plan is involved, it takes months before TaxMasters' contract will obligate it to begin work on a consumer's file, in direct contradiction of the salesperson's representations. The provision is located under the section entitled "Acknowledgements of Client and Firm," and it reads as follows:

> Client agrees Firm is not obligated to begin providing services to client until all fees are paid in full. Firm may begin providing services earlier

> than this date at its sole discretion without waiver of this provision or future right to invoke it.

TaxMasters' regular business practice is to induce customers to enter into an installment payment plan with the understanding that it will begin work immediately, without disclosing that TaxMaster's will not keep this promise.   Only later does the customer learn of this misrepresentation, when he receives a notice from the IRS that an important deadline was missed, or that the customer now owes additional interest and penalties to the IRS. These customers often find their tax cases irreparably prejudiced because they did not understand that TaxMasters would not start its representation until after the client's last fee installment had cleared the bank.

29.     The priority of a TaxMasters sales call is straight forward: get the would-be client to divulge what amount of money they have in their accounts, their wages, etc.  Sales staff is trained to obtain this information on the pretext that TaxMasters "needs to know what assets the client had to protect."  In reality, the questions are designed to establish client "suitability" based exclusively on the ability to pay.

**INVESTIGATIONS AND ENFORCEMENT ACTIONS BY ATTORNEYS GENERAL**

30.     TaxMasters' deceptive activities have been discovered by the Texas Attorney General, who is currently prosecuting an enforcement action against TaxMasters,[3] citing numerous customer complaints. Additionally, and upon information and belief, the Attorneys General of the States of Florida and Kansas are currently investigating TaxMasters.

**TAXMASTERS' SALES COMPENSATION SCHEME FOSTERS MISREPRESENTATIONS**

31.     TaxMasters operates its sales department in such a manner as to knowingly encourage the misrepresentations set forth hereinabove.  The salespersons are subjected to a

---

[3] *See* http://www.oag.state.tx.us/oagnews/release.php?id=3328; *See* Ex. B.

high-pressure, "eat what you kill" sales environment.  TaxMasters salespersons are paid ten percent of what they sell, plus bonuses once the salesperson sells over $2000.00 in services per week.  If the salesperson obtains $500.00 from the client and the client cancelled, the staff is paid $50.00.  If the client makes additional payments after the initial payment is received, the sales person is paid ten percent from every payment.  Salespersons are subjected to minimum sales goals.  Team members also receive team bonuses if the team averages over $20,000.00 per sales person.  Additionally, a $5,000.00 bonus is given for hitting one million dollars in sales for the year, with an additional $5,000.00 bonus for hitting one and a half million dollars in sales.

**ILLUSORY CUSTOMER SERVICE DEPARTMENT**

32.    Although TaxMasters does have a customer service number for customers who are unsatisfied, this "service" is actually no more than yet another device to further TaxMasters' delays and deceptions.  Salespersons are forbidden to talk to any clients once they signed up, except in the instance where team supervisors believed a canceling client might be re-sellable.  In the event a salesperson is ever on the phone with an existing customer, the sales representative is trained to "explain" that TaxMasters is "highly departmentalized," and that he "does not have access to the client's file."  This is generally untrue; typically, the representative does have access to the customer's information, but is not allowed to say so.  Customers are passed from person to person in order to disorient the caller, and if a customer identifies a particular salesperson to complain to, that salesperson is forbidden to talk with the customer again.

33.    As its regular business practice, TaxMasters employs the sales and marketing system and tactics described in the above paragraphs including 15-32 above (which are incorporated herein by reference.)  Dell-Wise, Miller and McKenna all sustained damages as a direct result of said conduct by TaxMasters.

## VI. Claim for Declaratory Relief Sought

34.     Plaintiffs seek a declaration that the arbitration clause contained on page eight (8) of the contract be stricken, because it renders the contract substantively and procedurally unconscionable and operates as a de facto exculpatory clause.

### Legal framework Establishing the Court's Authority

35.     The Declaratory Judgment Act states: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc,* 947 F.2d 193, 194 (5th Cir. 1991).  Plaintiffs further avail themselves of  28 U.S.C. § 2202, for any and all further relief the Court deems proper on the basis of the declaratory relief sought.

36.     Absent an express agreement to the contrary, the unconscionability of an arbitration clause (and thus its enforcement) is a gateway issue for the court.  *Doctor's Associates, Inc., v. Casarotto*, 517, U.S. 681, 687 (1996; s*ee also*, *See Green Tree Financial Corporation v. Bazzle*, 539 U.S. 444, 452 (2003).   Furthermore, the rules of the American Arbitration Association (hereinafter the "AAA,") the arbitration authority selected by TaxMasters, requires the same procedure.

### Factual Basis for Relief

37.     TaxMasters' contract is unconscionable in that it purports to limit damages and attorneys' fees, shift all costs to the customer, and preclude class action relief, so as to make any claim economically unviable.  The contract thereby purports to preclude and/or limit rights and

remedies guaranteed under statute.[4]  Under the Texas DTPA, damages are not limited: the act provides for attorney's fees, and the statute allows for consumer class actions relief. Further, the agreement to arbitrate is illusory, unconscionable and unenforceable, as only the customer, and not TaxMasters, is required to arbitrate. *(See* Plaintiffs' Contracts, attached as Ex. "A".)

38.     A review of the facts of Plaintiff Sandra Dell-Wise's situation demonstrates the unconscionability of TaxMasters' damages limitations scheme.  Dell-Wise paid $2,550.00 to TaxMasters.  Through advertising, she came to believe that TaxMasters could help solve her IRS and tax related problems.    This help seemed to be linked to an IRS Offer in compromise program.

39.     During the initial phone conference, the TaxMasters representative quickly developed a payment plan and acquired her payment information so that TaxMasters could "begin work on the tax problem immediately." Thereafter, despite Dell-Wise having paid $2550.00 to TaxMasters, it seemed as though nothing was being done to resolve her tax issues. Dell-Wise provided all the requested documents to TaxMasters in September of 2008, shortly after she hired them.  She called and emailed to follow up throughout September, October, November and December.

40.     On or about January 7, 2009 the IRS contacted her directly and told her she had better file her tax returns immediately, or else her possessions and disability checks would be seized.  The IRS agent also told her TaxMasters had never contacted them.  Dell-Wise contacted TaxMasters that same day and was told that she "had not submitted her documents," that "no one had been assigned to her file," and that "all tax consultants were on vacation and couldn't help

---

[4] Importantly, under §17.41 of the statute states that "[a]ny waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; ..."

her." By January 13th, TaxMasters acknowledged that they had received the documents she sent them in September. Dell-Wise fired TaxMasters on January 13th.

41. Despite her payment, Dell-Wise received *no* services, and therefore has a valid claim against TaxMasters. However, if she wished to complain of this in arbitration, the American Arbitration Association fees – not including arbitrator's hourly rates – would be $1850.00 for filing fees, proceeding fees and final fees (see Affidavit of Sandra Dell-Wise, attached as Exhibit C).

42. In addition she would have attorney's fees and costs. Air fare would cost approximately $458.00 round trip. Rental car for three days would cost around $132. Hotel rates for a three night stay in a hotel will cost approximately $315. General expenses while in Houston for the arbitration are estimated at approximately $50.00 per day. *See* Ex. C. If an attorney charges $200.00 per hour for 16 hours' work, attorneys' fees would be, at a minimum, $3,200.00.

43. Mr. Miller contacted TaxMasters on February 19, 2010. During this initial call, TaxMasters used the standard TaxMasters sales tactics referenced in paragraphs 14-31, above. Chief among these were promises of assistance. Material (including the contract) was forwarded to Miller, but he did not sign it. He had heard nothing from TaxMasters, except for being sent the contract materials. He began to research TaxMasters on the internet, and discovered numerous complaints about them. Miller's credit card was first billed on February 19, 2010. On or about March 1, 2010, Miller began emailing TaxMasters, telling them that he wished to discontinue services. He followed up with phone calls and emails, demanding a refund. He wrote TaxMasters on or about April 7, 2010 wherein he referenced the other communications and again asked for a refund. The letter was returned unclaimed. Miller's credit card statements

*Sandra Dell-Wise, et. al. v. TaxMasters, Inc., et. al.,*
*First Amended Original Class Action Complaint and Suit for Declaratory Relief*

14

reflect that TaxMasters billed his credit card on February 19th, ($583.33) March 19 ($583.33) and April 19, 2010 ($583.34) for a total of $1750.00.

44.     Miller made a complaint with the Better Business Bureau ("BBB") on or about May 15, 2010.   He also disputed the charges on his credit card with the credit card company. The BBB in turn forwarded the complaint to TaxMasters.  TaxMasters forwarded a letter date June 22, 2010 back to the BBB, which indicated they would refund Miller's money upon "further approval" of TaxMasters management.  However, it appears that at around the same time that TaxMasters was telling the BBB that it was refunding the money, they were also actively contesting Miller's credit card protest, filing documents on or about July 2010 with the credit card company claiming that Miller was "recorded" when Miller was "informed" that the amounts were non refundable, that Miller "agreed to contract services" and "agreed to continue" [the services].  This of course was after 1) Miller made multiple attempts to cancel the services and 2) TaxMasters told the BBB that would be a refund.   Ultimately, Miller received back one of his installments from the credit card company, resulting in the remainder balance of what is described above.  Despite TaxMasters' promises to the BBB to refund Miller's money, the refund was not received and Miller filed suit.

45.     Mr. McKenna's experience tracks Miller's experiences.  On Thursday, July 15, 2010, Pat McKenna responded to a television advertisement for TaxMasters.  McKenna's discussions with TaxMasters related to a reducing his tax problems to a "Penny on the dollar" settlement with the IRS.  During the phone call, McKenna was induced to give TaxMasters bank account information as part of TaxMasters' "information gathering" process for IRS negotiation purposes.  Further, McKenna was told that the deposit for services would be drawn from that account, so that TaxMasters could start to work for him right away.  McKenna agreed that he

would pay $1,000.00 and stipulated that funds would be available for withdraw within a week. The representative informed McKenna that they would put through an electronic check the following week (after verbally walking McKenna through how, if the check request was submitted on Friday it would not reach his bank until the next week, likely Monday or Tuesday.) McKenna was then passed to a verifier who quickly read terms and conditions of working with TaxMasters.  TaxMasters emailed the contract and other materials to McKenna.

46.     That same evening, (roughly four hours later), McKenna reviewed the company's contract and was unsatisfied with the terms and conditions contained therein. McKenna conducted some Internet research and found that on May 13, 2010 the Texas Attorney General's Office had filed suit against TaxMasters, charging the company with, among other things, multiple violations of the Texas Deceptive Trade Practices Act. McKenna emailed TaxMasters to inform him that he was not going to work with the firm and rescinded any authorization to debit his account for the down-payment. On Saturday July 17, 2010, McKenna was shocked to discover that TaxMasters succeeded in debiting his account for $1,000.00 despite his instructions to the contrary.  He called TaxMasters toll-free number, and obtained TaxMasters' Quality Assurance department number.

47.     The following Monday, July 19, 2010, McKenna called the Quality Assurance department to complain.  The representative told McKenna that he would review the recorded tapes of McKenna's transaction.  After about two days of reviewing these tapes, McKenna was informed that he would not be receiving a refund, because McKenna had "agreed" to the no refund policy during the "verification" process.  McKenna told TaxMasters that he had no idea that he was being bound to an agreement before he had the chance to review the documents,

much less sign them.  Further, McKenna had understood that no monies would be taken before he had the chance to review the documentation.

48.     McKenna, like Miller signed no contract.  As with Miller, TaxMasters refused to return McKenna's money.

## U.S. SUPREME COURT'S "ECONOMIC REALITY" ANALYSIS

49.     Fort those class members that have signed a contract, TaxMasters' arbitration clause invokes the jurisdiction of the AAA.   (See Exhibit A.)    The AAA's policies and procedures require that when a party seeks to bring a class action in the face of a contract clause purporting to ban such actions, the party should first seek the opinion of a court before proceeding.  A number of courts have taken issue with bans on class actions, especially in the consumer context.  *See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 n.9 (1980); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 161 (1974)* ("A critical fact ... is that petitioner's individual stake ... is only $70.  No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount.  *Economic reality dictates that petitioner's suit proceed as a class action or not at all.*"); *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) (Judge Posner observing  that "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). *See also,* THE FORTHCOMING, NEAR TOTAL DEMISE OF THE MODERN CLASS ACTION, *104 Mich. L. Rev. 373, 396-397* (2005); Jean R. Sternlight, AS MANDATORY BINDING ARBITRATION MEETS THE CLASS ACTION, WILL THE CLASS ACTION SURVIVE?, *42 Wm. & Mary L. Rev. 1, 5 n.2 (*2000). Consistent with Judge Posner's observations, for Wise to bring an arbitration action to recover a *negative $5,125.00*, would constitute just such "lunacy" or "fanaticism."

*Sandra Dell-Wise, et. al. v. TaxMasters, Inc., et. al.,*
*First Amended Original Class Action Complaint and Suit for Declaratory Relief*

17

50.     A growing number of courts have held that class action bans embedded in arbitration clauses are unconscionable or violate public policy, when they act as exculpatory clauses by effectively immunizing corporate defendants from any meaningful liability.[5]

51.     Indeed, the Federal Arbitration Act ("FAA") states that an arbitration clause may be unenforceable if it violates state law.  *See* FAA §2, which states,  "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration … shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." (Emphasis added).

52.     In the instant case, the arbitration clause itself is unenforceable under Texas law for the reason that it does not require both parties to arbitrate, and is therefore illusory, as shown below.

PROCEDURAL AND SUBSTANTIVE UNCONSCIONABILITY

53.     Under Texas law, as with most jurisdictions, there are two types of unconscionability: substantive (fairness of the arbitration provision itself) and procedural (fairness of the circumstances surrounding adoption of the arbitration provision). *See, e.g., In re*

---

[5] See, e.g., *Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1219 (9th Cir. 2008)* (Washington law); *Dale v. Comcast Corp., 498 F.3d 1216, 1224 (11th Cir. 2007)* (Georgia law); *Kristian v. Comcast Corp., 446 F.3d 25, 60 (1st Cir. 2006)* (federal and Massachusetts antitrust law); *Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1176 (9th Cir. 2003)* (California law); *Ting v. AT&T, 319 F.3d 1126, 1150 (9th Cir. 2003)* (California law); *Creighton v. Blockbuster Inc., 2007 WL 1560626, at 3* (D. Or. May 25, 2007) (Oregon law); *Cooper v. QC Fin. Servs., Inc.,* 503 F. Supp. 2d 1266, 1290 (D. Ariz. 2007) (Arizona law); *Wong v. T-Mobile USA., Inc.,* 2006 WL 2042512, at 5 (E.D. Mich. July 20, 2006) (Michigan law); *Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000) (Michigan law); *Leonard v. Terminix Int'l Co., L.P.,* 854 So.2d 529, 539 (Ala. 2002); *Discover Bank v. Super. Ct.,* 113 P.3d 1100, 1110 (Cal. 2005); *S.D.S. Autos, Inc. v. Chrzanowski, 976* So.2d 600, 611 (Fla. Dist. Ct. App. 2007*); Powertel, Inc. v. Bexley,* 743 So.2d 570, 576 (Fla. Dist. Ct. App. 1999); *Kinkel v. Cingular Wireless LLC,* 857 N.E.2d 250, 274 (Ill. 2006); *Whitney v. Alltel Comm'n, Inc.,* 173 S.W.3d 300, 314 (Mo. Ct. App. 2005); *Muhammad v. County Bank of Rehoboth Beach, Del.,* 912 A.2d 88, 100-01 (N.J. 2006); *Fiser v. Dell Computer Corp.,* 188 P.3d 1215, 1221 (N.M. 2008); *Tillman v. Commercial Credit Loans, Inc.,* 655 S.E.2d 362, 373 (N.C. 2008); *Schwartz v. Alltel Corp.,* 2006 WL 2243649, at 5 (Ohio Ct. App. June 29, 2006); *Eagle v. Fred Martin Motor Co.,* 809 N.E.2d 1161, 1183 (Ohio Ct. App. 2004); *Vasquez-Lopez v. Beneficial Or., Inc., 152* P.3d 940, 949-50 (Or. Ct. App. 2007); *Thibodeau v. Comcast Corp.,* 912 A.2d 874, 886 (Pa. Super. Ct. 2006); *Scott v. Cingular Wireless,* 161 P.3d 1000, 1006, 1008 (Wash. 2007); *State ex rel. Dunlap v. Berger,* 567 S.E.2d 265, 280 (W. Va. 2002); *Coady v. Cross Country Bank,* 729 N.W.2d 732, 748 (Wis. Ct. App. 2007).

*Sandra Dell-Wise, et. al. v. TaxMasters, Inc., et. al.,*
*First Amended Original Class Action Complaint and Suit for Declaratory Relief*

18

*Luna*, 175 S.W.3d 315, 319 (Tex. App. – Houston [1st Dist.] 2004, orig. proceeding). Both substantive and procedural unconscionability may be considered by a court in determining whether an arbitration clause is valid and enforceable. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) (orig. proceeding) ("courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision"). Although no single formula exists, proof of unconscionability begins with two broad questions: (1) how did the parties arrive at the terms in controversy; and (2) are there legitimate commercial reasons justifying the inclusion of the terms? *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493 498-99 (Tex. 1991) (Gonzalez, J., concurring).

SUBSTANTIVE UNCONSCIONABILITY

54.     The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding) (quoted in *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding)). Under *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000), where a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. *See In re FirstMerit Bank*, N.A., 52 S.W.3d 749, 756-57 (Tex. 2001).

55.     In this instance, the contract itself resolves the inquiry, in that:

1.  all costs of arbitration must be born by Plaintiffs, regardless of which party demands arbitration;

2.  the economic realities of the contract preclude any viable recovery; and

3.   the arbitration requirement is not mutual.

*See* Exhibit A.

56.     Not only does the cost issue lead to the loss of rights identified in the U.S.
Supreme Court in *Green Tree*, it also serves as an abrogation of the customer's statutory rights
(for example, the right to bring a DTPA claim, which entitles the Plaintiffs to fees, costs and
doubling or trebling damages).    For example, in *Scott v. Singular Wireless* (cited above), the
court considered the class action ban to be an effective abrogation of Washington's version of
the DTPA. The *Scott v. Singular Wireless* Court noted that – in the context of consumer
protection – customers act as private attorneys general in protecting the public's interest against
unfair and deceptive practices.  *Scott v. Singular Wireless*, 161 P.3d at 1006.  Noting that the use
of class actions are a critical piece of enforcement of consumer law, *Scott* held that denying
customers the ability to bring class actions greatly reduces the customers ability to vindicate
consumer rights.  *Id*.  The holding in the *Scott v. Singular Wireless* case also connected the dots
between a ban on class actions and *exculpation*.   First, the court observed that   "Contract
provisions that exculpate the author for wrongdoing, especially intentional wrongdoing,
undermine the public good … [and that] … exculpation from any  potential liability for unfair or
deceptive acts or practices in commerce clearly violates public policy."  *Id*.   Finally the court
observed that " … on its face, the class action waiver does not exculpate Cingular from anything;
it merely channels dispute resolution into individual arbitration proceedings or small claims
court. But in effect, this exculpates Cingular from legal liability for any wrong where the cost of
pursuit outweighs the potential amount of recovery…"  *Scott v. Singular Wireless*, 161 P.3d at
1007.

57.     Another example of the unconscionable one-sidedness of TaxMasters' class arbitration ban is this: under no circumstances would TaxMasters have occasion to bring a class action against its clients.  This is because "…companies typically do not sue their customers in class-action lawsuits…" *Ting v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003).

58.     Further, the arbitration clause is illusory and unenforceable as a matter of law because it does not require TaxMasters to arbitrate its claims against its customer. *The clause only – and unilaterally –  requires the customer to arbitrate customers' claims.*   In *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. Tex. 2008), the Fifth Circuit noted that where one party purports to require another to submit its claims to arbitration, but accepts no such limitation itself, no enforceable arbitration agreement exists, due to the lack of mutuality of obligation.  In support of this position, the Fifth Circuit in turn relied on the Texas Supreme Court in *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003).  *J.M. Davidson, Inc. v. Webster*, in turn, cites to at least eight cases regarding how the lack of mutual obligation destroys the enforceability of an arbitration clause.  *Id.*  By way of further example, courts in the employment context have held arbitration clauses that lack bilateral obligation are illusory and unenforceable. *See Zamora v. Swift Transp. Corp.*, 2008 U.S. Dist. LEXIS 49990, *10 (W.D. Tex. June 3, 2008) (Under Texas law, the validity of a contract is dependant upon consideration or mutuality of obligation. *In re C & H News Co.*, 133 S.W.3d 642, 645-46 (Tex. App.—Corpus Christi, [13th Dist.] 2003). When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract. A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *Id.* The Fifth Circuit and the Texas Supreme Court have both held that if the defendant-employer retains the right to "unilaterally abolish or modify" the arbitration provision then the agreement to arbitrate is

illusory and not binding upon the plaintiffs.  *Morrison v. Amway Corp.*, 517 F.3d 248, 255 (5th

Cir. 2008), (Citing *J.M. Davidson Inc. v. Webster*, 128 S.W.3d 223, 230 & n.2) (Tex. 2003); *see

also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006)).[6] The arbitration clause

on page eight of TaxMasters' contract only requires the client to file arbitration of any disputes

he or she has;  it does not require TaxMasters to file arbitration, only going so far as to say that

TaxMasters **may** demand arbitration.

59.     The damages limitations contained on page eight of TaxMasters' contract are

specifically designed for the sole purpose of establishing an economic reality which exculpates

TaxMasters from civil liability.   The situation of Plaintiff Dell-Wise illustrates the economic

reality of the TaxMasters scheme.  See Exhibit A.

PROCEDURAL UNCONSCIONABILITY

60.     Complaints regarding procedural unconscionability are also properly the province

of the courts.  *See In re Weeks Marine, Inc.*, 242 S.W.3d 849, 2007 Tex. App. LEXIS 9867 (Tex.

App. Houston 14th Dist. 2007), citing to *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388

U.S. 395, (1967). Procedural unconscionability is concerned with assent, and focuses on the facts

surrounding the bargaining process.  *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817,

821 (Tex. App. – San Antonio 1996, no writ).  Where the execution of a contract is procured by

misrepresentation or concealment, such that there is no real assent to the agreement, assent may

be negated and the binding nature of the contract avoided.  *Self v. Miller*, 2001 Tex. App. LEXIS

6026 (Tex. App.  – Houston [1st Dist.] Aug. 30, 2001), citing to *Amouri v Southwest Toyota,

Inc.*, 20 S.W.3d 165, 169 (Tex. App. – Texarkana 2000, pet. denied), *Accord*, *In re Media Arts*

[6]  For example in  *Zamora v. Swift Transp. Corp*., 2008 U.S. Dist. LEXIS 49990, n. 2,  the court stated noted that "In
Webster, the Supreme Court of Texas cited two federal courts of appeal in support of its finding that if a party
retains a unilateral, unrestricted right to terminate the agreement, then the agreement to arbitrate is illusory. *Webster*,

*Group, Inc*., 116 S.W.3d 900, 908 (Tex. App. – Houston [14th Dist.] 2003). When TaxMasters contracts with new clients such as the Plaintiffs, TaxMasters knows it is misrepresenting the benefits of its services and the terms of its standard contract. Once the truth is discovered, its clients face an exculpatory arbitration scheme that prevents any economically viable claim from being brought. This scheme effectively exculpates TaxMasters from liability. Thus, under the facts of this case as set forth hereinabove, TaxMasters' misrepresentations are sufficient to invoke the doctrine of procedural unconscionability.

61.     For all of the above and incorporated reasons, Plaintiffs on behalf of themselves and the class asks for a declaration that the arbitration clause, inclusive of its additive restrictions, limitations, and requirements, be voided from the contract.

### VII. CLASS ALLEGATIONS

62.     Each of the above allegations is incorporated herein.

63.     Plaintiffs bring this action on behalf of themselves and all other members of the class consisting of persons who sought to acquire services from TaxMasters for tax related problems.  All members of the class contacted TaxMasters and paid money to TaxMasters based on misrepresentations by TaxMasters as to the benefits of its services and the terms of its standard contract.  At least one of the class representatives is diverse in citizenship from at least one of the Defendants.  Excluded from the Class are defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including, without limitation, persons who are directors of TaxMasters.

64.     The Class is composed of no fewer than hundreds, if not thousands of persons nationwide, and is sufficiently numerous for class treatment. The joinder of all Class members

128 S.W.3d at 231 n.2 (citing *Dumais v. Am. Golf C*orp., 299 F.3d 1216, 1219 (10th Cir. 2002),   *Floss v. Ryan's*

individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Exhibit D demonstrates that for the nine-month period ending on September 30, 2009, TaxMasters earned 26.9 million dollars.  If TaxMasters charges $5,000.00 per person, this equates to roughly 5,380 customers. See Exhibit D.

65.     This dispute raises questions of law and fact that are common to all Class members.  Those common questions predominate over questions that arise on an individual basis for Class members. The common questions of law and fact include, without limitation, whether:

(a)     Defendants engaged in trade or commerce as the term is defined in the Texas DTPA.

(b)     Defendants in the course of trade and commerce engaged in false, misleading and deceptive acts and practices as declared unlawful by the DTPA.

(c)     Defendants in the course of trade and commerce violated the DTPA by representing goods or services had benefits which they did not have;

(d)     Defendants in the course of trade and commerce violated the DTPA by advertising goods or services with the intent not to sell them as advertised;

(e)     Defendants, in the course of trade and commerce violated the DTPA by representing that an agreement conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law;

(f)     Defendants, in the course of trade and commerce, violated the DTPA by failing to disclose information concerning goods or services which was known at the time of the transaction with the intent to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

(g)     TaxMasters engaged in an unconscionable course in connection with their transactions with the class members;

(h)     TaxMasters breached its contract with the Plaintiffs and class as defined under Texas law;[7]

_Family Steak Houses, Inc._, 211 F.3d 306, 315-16 (6th Cir. 2000)."
[7]     Plaintiffs assert that TaxMasters violated contracts with its nation-wide customers as defined under Texas law as this was a Texas contract, entered in the state of Texas between TaxMasters and the Plaintiff and class members.  Plaintiff asserts that an efficient and manageable course is to apply Texas law as to all class members.

(i)     TaxMasters violated the Texas DTPA as against all members of the class, and/or in the alternative whether TaxMasters violated the relevant consumer protection statute of each individual member's state, such that the state has a relevant statute;[8]

(j)     The members of the Class have been injured by TaxMasters' conduct;

(k)     The members of the Class have sustained damages and are entitled to restitution as a result of TaxMasters' wrongdoing and, if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution;

(l)     The members of the Class are entitled to declaratory relief; and

66.     There are no differences between the class representatives and the putative claus creating any conflicts of interest.   Plaintiffs are willing to act as class representatives, and play a vigorous role, and have retained counsel experienced and competent in the prosecution of class action litigation.   Counsel have many years of combined experience and are employed with a firm experienced in class litigation.

67.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.   Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.   A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs

Plaintiff further asserts that all of the class member's jurisdictions have breach of contract actions with virtually identical elements.  Similarly, issues of manageability and efficiency are likewise addressed by applying the Texas DTPA across the class because (as demonstrated below), most jurisdictions have nearly identical elements in those sister states' consumer protections statutes.  Alternatively, Plaintiff asserts the applications of the consumer protections of the various states.
[8]   *See* note 6 supra.

complained of herein. If a Class or general public action is not permitted, Class members will continue to suffer losses and TaxMasters' misconduct will continue without proper remedy, because among other things, failing to prosecute TaxMasters as a class would result in varying adjudications with respect to individual members of the class imposing incompatible standards of conduct on TaxMasters, and/or adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantively impair or impede their ability to protect their interests.

68.     TaxMasters has acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## VIII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION: VIOLATION OF THE TEXAS DTPA

69.     Each of the above allegations is incorporated herein.   In particular, the misrepresentations discussed in the global TaxMasters' 'system' and individual facts are incorporated herein by reference.   Because the instant fact involved both contracts, and misrepresentations, TaxMasters' activities are actionable under the DTPA.

70.     This suit is brought against Defendants for violations of the Texas Deceptive Trade Practices -- Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41, *et seq.* (the "DTPA"). Plaintiffs are "Customers," as defined by DTPA § 17.45(4). Defendants are "person(s)" within the meaning of the DTPA § 17.45(3), who have at all times, as described above and below, offered goods and services and engaged in conduct that constitutes "trade" and "commerce," as those terms are defined by § 17.45(6) of the DTPA.

71.     Defendants, as alleged and detailed above, have in the course of trade and commerce engaged in false, misleading and deceptive acts and practices as declared unlawful in §17.46(a) of the DTPA. These actions include, but are not limited to the enumerated acts below.

72.     Defendants, as alleged and detailed above, have in the course of trade and commerce violated § 17.46(b)(5) of the DTPA by representing that their services had benefits which they did not have.

73.     Defendants, as alleged and detailed above; have in the course of trade and commerce violated §17.46(b)(9) of the DTPA by advertising goods or services with the intent not to sell them as advertised.

74.     Defendants, as alleged and detailed above, have in the course of trade and commerce violated §17.46(b)(12) of the DTPA by representing that an agreement conferred or involved rights, remedies, or obligations which it did not have or involve, or which were prohibited by law.

75.     Defendants, as alleged and detailed above, have in the course of trade and commerce violated §17.46(b)(24) of the DTPA by failing to disclose information concerning goods or services which was known at the time of the transaction with the intent to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

76.     Defendants engaged in an unconscionable course of conduct, as that term is understood at law, in connection with the sale of their services to the class members.

**SECOND CAUSE OF ACTION: UNFAIR AND DECEPTIVE ACTS AND PRACTICES UNDER THE VARIOUS STATE LAWS IN WHICH CLASS MEMBERS RESIDE, STATED IN THE ALTERNATIVE TO THE FIRST CAUSE OF ACTION, IF THE COURT EVENTUALLY DETERMINES THAT THE LAWS OF A CUSTOMERS' RESIDENCE AND NOT THOSE OF THE STATE OF TEXAS APPLY TO TAXMASTERS' WRONGFUL, UNFAIR, AND DECEPTIVE ACTS (AGAINST ALL DEFENDANTS)**

77.     Each of the above allegations is incorporated herein.

78.     Incorporating note 6 and 7 above, Plaintiffs suggest that this Circuit apply the Texas consumer protection statutes to the nationwide Class claims for several reasons. First, TaxMasters' wrongful acts and practices were directed and disseminated from TaxMasters' headquarters in Houston, Texas.  Second, because the choice of law is in question at this point in litigation, Plaintiffs suggest the following alternative causes of action under the laws of the States of residence of Class members, if it is later determined by the Court that the choice of law rules require the application of these State laws, and not exclusively those of Texas.

79.     The practices discussed above, including but not limited to TaxMasters knowing and undisclosed general inability to afford meaningful tax relief and Taxmaster's billing and/or charging practices, all constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts of business practices in violation of the state consumer protection statutes listed below.  Defendants engaged in unfair business practices, as described under the laws of the various states, including but not limited to the laws of:

**Alabama:**

80.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in Alabama in violation of Ala. Code, § 8-19-1, *et. seq*. In particular, Alabama law provides under § 8-19-5 that it is unlawful to: (2) Cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services… (5) Represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have … (7) Represent that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another.…  (9) Advertise goods or services with intent not to sell them as advertised.

81.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services, and by committing other acts factually described above, Defendants violated the Alabama Deceptive Trade Practices Act, specifically Ala. Code, § 8-19-1.

**Alaska:**

82.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*  In particular, Alaska law provides under § 45.50.471 that unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. Under Alaska law, the terms 'unfair methods of competition' and 'unfair or deceptive acts or practices' include, but are not limited to, the following acts:… (b)(3) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . (b)(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another . . . (b)(8) advertising goods or services with intent not to sell them as advertised.

83.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services, and by committing other acts factually described above, Defendants violated the Alaska Stat. Ann. §45.50.471, *et. seq*.

**Arizona:**

84.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1521, *et seq*. Particularly, Arizona law prohibits under Ariz**.** Rev. Stat. Ann. § 44-1522(A) that [t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

85.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services, and by committing other acts factually described above, Defendants violated the Ariz. Rev. Stat. Ann. § 44-1522, *et. seq*.

**Arkansas:**

86.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. §4-88-101, *et seq*. In particular, under Ark. Code Ann. § 4-88-107 Arkansas law states that, "(a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following; (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model . . . (3) Advertising the goods or services with the intent not to sell them as advertised . . . (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade. . ."

87.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services, and by committing other acts factually described above, Defendants violated the Ark. Code Ann. § 4-88-101, *et seq*.

**California:**

88.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Unlawful, Unfair and Fraudulent Business Acts and Practices in Violation of Cal. Bus. & Prof. Code § 17.200, 17500, *et seq*.  Specifically,  Under § 17500, it is unlawful for any person, firm, corporation or association, or any employee thereof with intent … to perform services, professional or otherwise ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning … those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading …

89.     Under Cal. Civ. Code § 1770 (a)(5) it is unlawful to represent goods or services that have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have … under (a)(7) Representing goods or services that are of a particular standard, quality, or grade, or goods [which] are of a particular style or model, if they are of another ... (a)(9) Advertising goods or services with intent not to sell them as advertised … (a)(14)

Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

90.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services, and by committing other acts factually described above, Defendants violated the Cal. Bus. & Prof. Code § 17200, 17500, *et seq*. and Cal. Civ. Code § 1770, *et seq*.

**Colorado:**

91.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Colo. Rev. Stat. § 6-1-101, *et seq*. In particular, Colorado law provides under Colo. Rev. Stat. § 6-1-105, "(1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . . (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; . . . (i) Advertises goods, services, or property with intent not to sell them as advertised; . . . (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction . . ."

92.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false

and misleading statements related to the services, and by committing other acts factually described above, Defendants violated the Colo. Rev. Stat. § 6-1-101, *et seq*.

**Connecticut:**

93.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110a, *et seq*. In particular, Connecticut law under provides § 42-110b(a) that, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

94.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services, and by committing other acts factually described above, Defendants violated the Conn. Gen. Stat. § 42-110a, *et seq*.

**Delaware:**

95.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Del. Code Ann. tit. 6, § 2511, *et seq*.  In particular, Delaware law under § 2513(a) provides that, "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."   Under § 2511(6), Delaware law provides that "merchandise" includes services.

96.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false

and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Del. Code Ann. tit. 6, § 2511, *et seq*.

**District of Columbia:**

97.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, *et seq*. Particularly, District of Columbia law provides under § 3904 that, "[i]t shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:… (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; (f) fail to state a material fact if such failure tends to mislead; . . . (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered."

98.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the D.C. Code §28-3901, *et seq*.


**Florida:**

99.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq*. In particular, under § 501.204 provides that,

"(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

100.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Fla. Stat. § 501.201, *et seq*.

**Georgia:**

101.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Code Ann. § 10-1-390, *et seq*. In particular, Georgia law provides under §10.-1-393, that, "(a) [u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful. (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (7) Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised . . ."

102.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Ga. Code Ann. § 10-1-390, *et seq*.

**Hawaii:**

103.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 481A-1, *et seq*.  In particular, Hawaii law provides under Haw. Rev. Stat. § 481A-3 (a) that, "[u]nfair methods of competition, unfair or deceptive acts or practices in the conduct of any trade or commerce is unlawful." Hawaii law further provides that, "a person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .  (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

104.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Haw. Rev. Stat. § 481A-1, *et seq*.

**Idaho:**

105.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code Ann. § 48-601, *et seq*. In particular, under § 48-603 Idaho law provides that, "the following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (7) Representing that goods or services are

of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . (17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer . . . "

106.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Idaho Code Ann. § 48-601, *et seq*.

**Illinois:**

107.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 510/1, *et seq.* In particular, Illinois law provides under 815 Ill. Comp. Stat. 510/2 that, "(a) [a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:… (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;… (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;… (9) advertises goods or services with intent not to sell them as advertised;… (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

108.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false

and misleading statements related to the services and by committing other acts factually described above, Defendants violated the 815 Ill. Comp. Stat. 510/1, *et seq.*

**Indiana:**

109.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code § 24-5-0.5-1, *et seq*. In particular, Indiana law provides under Ind. Code § 24-5-0.5-3. that, "(a) The following acts or representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts: (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not;… (8) That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knew or reasonably should have known that the representation is false."

110.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Ind. Code § 24-5-0.5-1, *et seq.*

**Iowa:**

111.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code and/or those acts giving rise to a private right of action under House File 712, signed in to law May 26, 2009, including unfair practice, deception, fraud, false pretense, false promise or misrepresentation, including the omission of material fact.

112.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Iowa consumer protections laws, including, but not limited to, HF 712 and/or any codification to Iowa's consumer protection act.

**Kansas:**

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. Ann. § 50-623, *et seq.* In particular, Kansas law provides under Kan. Stat. Ann. § 50-626, "(a) that  no supplier shall engage in any deceptive act or practice in connection with a consumer transaction; (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled; (1) representations made knowingly or with reason to how that: (A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have; . . . (D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; . . . (F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or (G) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of

proof or substantiation represented to exist; (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . ."

114.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Kan. Stat. Ann. § 50-623, *et seq.*

**Kentucky:**

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. Ann. § 367.110, *et seq.*   In particular, Kentucky law provides under Ky. Rev. Stat. Ann**.** § 367.170(1) that, "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The statute states that, "under §§ (2), for the purposes of this section, unfair shall be construed to mean unconscionable."

116.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Ky. Rev. Stat. Ann.  § 367.110, *et seq.*

**Louisiana:**

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. Ann. § 51:1401, *et seq*. Particularly, Louisiana law Provides under La. Rev. Stat. Ann. § 51:1405A that, "Unfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

118.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the La. Rev. Stat. Ann. § 51:1401, *et seq.*

**Maine:**

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.* In particular, Maine law provides under Me. Rev. Stat. Ann. tit. 5, § 207 that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

120.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*

**Maryland:**

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code Ann., Corn. Law § 13-101, *et seq.* In particular, Maryland law provides under Md. Code Ann., Corn. Law § 3- 301 that, "Unfair or deceptive trade practices include any: (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading customers; (2) Representation that: (i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient,

use, benefit, or quantity which they do not have; or . . . (iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) Failure to state a material fact if the failure deceives or tends to deceive; . . . (5) Advertisement or offer of consumer goods, consumer realty, or consumer services: (i) Without intent to sell, lease, or rent them as advertised or offered; . . . (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods, consumer realty, or consumer service . . ."

122.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Md. Code Ann., Corn. Law § 13-101, *et seq*.

**Massachusetts:**

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, § 1, *et seq*. In particular, Massachusetts law provides under Mass. Gen. Laws ch. 93A, § 2 that, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

124.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Mass. Gen. Laws ch. 93A, § 1, *et seq*.

**Michigan:**

125.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws § 445.901, *et seq*. In particular, Michigan law provides under Mich. Comp. Laws § 445.903 that, "(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: . . . (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented; . . . (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; . . . (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;. . . (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."

126.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Mich. Comp. Laws § 445.901, *et seq*.

**Minnesota:**

127.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the Minnesota Deceptive Trade Practices Act. Under Minn. Stat. § 325D.44, Minnesota law provides that, **"**A person engages in a deceptive trade practice when, in

the course of business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, sub. 1.

128.    Minnesota law further provides under Minn. Stat.  § 325F.67 that, "Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such."   Minnesota law also provides that, "The act, use, or employment by any person of any

fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely there on in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable . . . ." Minn. Stat. § 325F.69, sub. 1**.**

129.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Minnesota Deceptive Trade Practices Act.

**Mississippi:**

130.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1. Under § 75-24-5(1), Mississippi provides that, "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited."  Further under §§(2) (e), Mississippi law provides that, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have…[is prohibited];   (g) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another [is prohibited];  (i) advertising goods or services with intent not to sell them as advertised [is prohibited]."

131.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Miss. Code Ann. § 75-24-1.

**Missouri:**

132.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.010, *et seq*. In particular Missouri law provides under Mo. Rev. Stat. § 407.020 that, "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .  in or from the state of Missouri, is declared to be an unlawful practice. . . ."

133.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Missouri Deceptive Trade Practices Act.

**Montana:**

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. § 30-14-101, *et seq*. In particular, Montana law provides under Mont. Code Ann. § 30-14-103 that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

135.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Mont. Code Ann. § 30-14-103.

**Nebraska:**

136.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*. In particular, under Neb. Rev. Stat. § 59-1602 Nebraska law provides that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Nebraska law further provides under Neb. Rev. Stat. § 87-302 that, "(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she: . . . *(5)* Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (c) This section does not affect unfair trade practices otherwise actionable at common law or under  their statutes of this state."

137.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Neb. Rev. Stat. § 59-1601, *et seq*.

**Nevada:**

138.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq*. Particularly, Nevada law provides, "A person engages in a 'deceptive trade practice' if, in the course of his business or occupation, he or she: . . . 2. Knowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease.  3. Knowingly makes a false representation as to affiliation, connection, association with or certification by another person.  5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship,

approval, status, affiliation or connection of a person therewith . . . 9. Advertises goods or services with intent not to sell or lease them as advertised . . . 15. Knowingly makes any other false representation in a transaction . . ." Nev. Rev. Stat. § 598.09 15.

139.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Nev. Rev. Stat. Sec. 598.09 15.

**New Hampshire:**

140.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. § 358-A:1, *et seq*. Particularly, New Hampshire law provides, "It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following: . . . II. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; III. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by another;   . . . V. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such person does not have; . . . K. Advertising goods or services with intent not to sell them as advertised . . . ." N.H. Rev. Stat. Ann. § 358-A:2.

141.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false

and misleading statements related to the services and by committing other acts factually described above, Defendants violated the N.H. Rev. Stat. Ann. § 358-A:1,2, *et seq.*

**New Jersey:**

142.    Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J.S.A. § 56:8-1, *et seq.* Particularly, New Jersey law provides that, "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . " N.J.S.A. § 56:8-2.

143.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the N.J.S.A. § 56:8-2.

**New Mexico:**

144.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.* In particular, New Mexico law provides, "'unfair or deceptive trade practice' means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the

regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes: . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; . . . (7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another; . . . (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive; . . . E. 'unconscionable trade practice' means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services . . . (I) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. §57-12-2.

145.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the N.M. Stat. §57-12-2.

**New York:**

146.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*. In particular, New York law provides, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law 349.

147.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false

and misleading statements related to the services and by committing other acts factually described above, Defendants violated the N.Y. Gen. Bus. Law 349.

**North Carolina:**

148.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq*. In particular, North Carolina law provides, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-l.l(a).

149.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the N.C. Gen. Stat. § 75-l.l(a).

**North Dakota:**

150.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq*. In particular, North Dakota law provides, "The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice." N.D. Cent. Code § 51-15-02.

151.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the N.D. Cent. Code § 51-15-02.

**Ohio:**

152.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code Ann. § 1345.01, *et seq*. In particular, Ohio law provides that, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Rev. Code Ann. § 1345.02(a). Further, Ohio law states "the act or practice of a supplier in representing any of the following is deceptive: (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; . . . (9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have. Ohio Rev. Code Ann. § 1345.02(b).

153.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Ohio Rev. Code Ann. § 1345.02(b).

**Oklahoma:**

154.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. tit. 15, § 751, *et seq*. In particular, Oklahoma law provides, "As used in the Oklahoma Consumer Protection Act: . . . 13. 'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; 14. 'Unfair trade practice' means any practice which offends established public

policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers. . . " Okla. Stat. tit. 15, § 752. Oklahoma law further provides that, "A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act, Section 751 *et seq.* of this title, when, in the course of the person's business, the person; . . . 2. Represents, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;   3. Makes a false or misleading representation, knowingly or with reason to know, as to affiliation, connection, association with, or certification by another;  . . . 5. Makes a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith; . . . 8. Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised; . . . 20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title . . . " Okla. Stat. tit. 15, 5 753.

155.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Okla. Stat. tit. 15, 5 753.

**Oregon:**

156.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat, § 646.605, *et seq.* In particular, Oregon law provides that, "A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person: (1) Employs any unconscionable tactic in connection with the sale,

rental or other disposition of real estate, goods or services . . . " Or. Rev. Stat. § 646.607. Oregon law further provides, "(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following: . . . (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services; (c) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; . . . (e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship , approval, status, qualification, affiliation, or connection that the person does not have; . . . (i) Advertises real estate, goods or services with intent not to provide them as advertised; . . . (u) Engages in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. 4 646.608.

157.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Or. Rev. Stat. 4 646.608.

**Pennsylvania:**

158.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. Ann. tit. 73, § 201-1, *et seq*. In particular, Pennsylvania law provides that, "(4) 'Unfair methods of competition and 'unfair or deceptive acts or practices' mean any one or more of the following: . . . (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or

*Sandra Dell-Wise, et. al. v. TaxMasters, Inc., et. al.,*
*First Amended Original Class Action Complaint and Suit for Declaratory Relief*

54

association with, or certification by, another; . . . (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Pa. Stat. Ann. tit. 73, § 201-2.

159.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Pa. Stat. Ann. tit. 73, § 201-2.

**Rhode Island:**

160.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1 -1, *et seq*. In particular, Rhode Island law provides that, "As used in this chapter: . . . (6) 'Unfair methods of competition and unfair or deceptive acts or practices' means any one or more of the following: (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods and services; (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a persona has a sponsorship, approval, status, affiliation, or connection that he or she does not have; (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding; (xiii) Engaging in any act or practice that is unfair or

deceptive to the consumer; (xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect;" R.I. Gen. Laws § 6-13.1-1.

161.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the R.I. Gen. Laws § 6-13.1-1.

**South Carolina:**

162.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. § 39-5-10, *et seq*. In particular, South Carolina law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. . . ." S.C. Code Ann. § 39-5-20.

163.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the S.C. Code Ann. § 39-5-20.

**South Dakota:**

164.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq*. In particular, South Dakota law provides that, "It is a deceptive act or practice for any person to: (1) Knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged thereby." S. D. Codified Laws § 37-24-6(1).

165.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the S. D. Codified Laws § 37-24-6(1).

**Tennessee:**

166.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101, *et seq*. In particular, Tennessee law provides that, "(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part . . . (2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services . . . . (3) Causing likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another. . .   (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . " Tenn. Code Ann. § 47-18-104.

167.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Tenn. Code Ann. § 47-18-104.

**Utah:**

168.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. 13-11a-1, *et seq*. In particular, Utah law provides, "(1) A Deceptive trade practices occur when, in the course of a person's business, vocation, or

occupation that person: (b) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another; . . . . (e) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . . (i) advertises goods or services or the price of goods and services with intent not to sell them as advertised; . . . (t) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.  Utah Code Ann. 13-11a-1, *et seq*.

169.   By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Utah Code Ann. 13-11a-1, *et seq*.

**Vermont:**

170.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, 5 2451, *et seq*. In particular, Vermont law provides, "(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." Vt. Stat. Ann. tit. 9, 5 2453.

171.   By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Vt. Stat. Ann. tit. 9, 5 2453.

**Virginia:**

172.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code Ann. § 59.1-196, *et seq*. In particular, Virginia law provides, "A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful: . . . 2. Misrepresenting the source, sponsorship, approval, or certification of goods or services; . . . . 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised.  In any action brought under this subdivision, the refusal by any person, or any employee, agent, or servant thereof, to sell any goods or services advertised or offered for sale at the price or upon the terms advertised or offered, shall be prima facie evidence of a violation of this subdivision.  This paragraph shall not apply when it is clearly and conspicuously stated in the advertisement or offer by which such goods or services are advertised or offered for sale, that the supplier or offeror has a limited quantity or amount of such goods or services for sale, and the supplier or offeror at the time of such advertisement or offer did in fact have or reasonably expected to have at least such quantity or amount for sale; . . . . 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . 16. Failing to disclose all conditions, charges, or fees relating to: a. the return of goods for refund, exchange or credit . . . " Va. Code Ann. § 59.1-200. By selling the 'Televisions to customers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Defect, and due to Defendants' improper warranty practices and false and misleading statements to customers about the existence of, and fix for, the Defect, Defendants violated Va. Code Ann. § 59.1-200.

173.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Va. Code Ann. § 59.1-196, *et seq*.

**Washington:**

174.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Annotated Revised Code of Washington, Title 19, Chapter 19.*86 et seq*. Particularly, Washington law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.020.

175.     By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Wash. Rev. Code § 19.86.020.

**West Virginia:**

176.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Chapter 46-A of the West Virginia Code (the "West Virginia Consumer Credit and Protection Act").   In particular, § 46A-6-102(7) provides "'Unfair methods of competition and unfair or deceptive acts or practices' means and includes, but is not limited to, any one or more of the following:  . . .  (B) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; (C) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another; (E) Representing that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have; . . . . (I) Advertising goods or services with intent not to sell them as advertised; . . . (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; . . . (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." W. Va. Code 46A-6-102.

177.   By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the W. Va. Code 46A-6-102.

**Wisconsin:**

178.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the Wisconsin Consumer Act and Wis. Stats. 100.18, 100.20. Particularly, under Wisconsin law it is unlawful to "engage in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wis. Stat. 100.18, 100.20, *et seq*. Furthermore, "Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited." Wis. Stat. 9 § 100.20(1).

179.   By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false

and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Wis. Stat. 9 § 100.20(1).

**Wyoming:**

180.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ch. 401-12-101 *et seq*. of the Wyoming Constitution (the "Wyoming Consumer Protection Act").  Particularly, under § 40-12-105(a), Wyoming law states that "[a] person engages in a deceptive trade practice unlawful under this act when [he]: (i) represents that merchandise has a source, origin, sponsorship, approval, accessories, or uses that it does not have; (ii) represents that he has a sponsorship, approval or affiliation he does not have; . . . (x) advertises merchandise with intent not to sell it as advertised. . . (xv) engages in unfair or deceptive acts or practices."

181.    By advertising the ability to help people with tax problems, by continuing to omit material information after contact ensued between Plaintiffs and Defendants, by making false and misleading statements related to the services and by committing other acts factually described above, Defendants violated the Wyoming Constitution § 40-12-105(a).

THIRD CAUSE OF ACTION: BREACH OF CONTRACT

182.    Each of the above allegations is incorporated herein.   In particular, and incorporating all the paragraphs above, the Plaintiffs as well as the putative class members all sustained contract damages which were or are the direct and proximate result of Defendants' regular business practices.  All of the Plaintiffs and putative class members experienced the same marketing and collection procedures which were uniformly applied to all of the Plaintiffs and putative class members.   All of these actions constitute breach of contract with regards to individuals who refused to sign the written material that was sent after TaxMasters collected

payment information.   It was TaxMasters' regular business practice to refuse to honor TaxMasters' verbal contracted promises and representations made in the initial telephone conversation with regard to those Plaintiffs and putative class members who did not sign a TaxMasters contract.   TaxMasters' misrepresentations and failure to perform (which conduct was committed as TaxMasters' regular course of business) constituted breach of contract.

183.   Defendants breached its contract with Plaintiffs.

184.   The elements of a breach of contract claim are (1) the existence of a valid contract between Plaintiffs and Defendant, (2) the Plaintiffs' performance or tender of performance, (3) the Defendant's breach of the contract, and (4) the Plaintiffs' damage as a result of the breach. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.,* 97 S.W.3d 631, 636 (Tex. App.--Houston [1st Dist.] 2002, pet. denied).

185.   TaxMasters entered into valid contracts with its customers promising to deliver tax relief.  The plaintiffs tendered performance by paying TaxMasters.  TaxMasters breached by not rendering services as promised.  Plaintiffs have been damaged as result of the breach.

## IX. CONCLUSION

186.   TaxMasters' arbitration clause does far more than compel arbitration. The arbitration clause also limits damages, prevents recovery of attorney's fees, bars class action, and shifts all costs to the putative Plaintiffs.  The obvious impact of the class arbitration ban is that it makes redress of grievance a practical impossibility.   In the face of such impracticality, TaxMasters is free to wrong its customers – who can ill afford such damage – with absolute impunity.   Further, the contract is unconscionably one-sided, in that no circumstance exists wherein TaxMasters would have occasion to bring a class action against its customers. Therefore, this Court should exercise its legal and equitable powers, and invalidate the contract's

arbitration clause, as well as the provisions limiting damages and shifting arbitration costs to its clients.

## X. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, SANDRA DELL-WISE, RALPH J. MILLER, AND PATRICK MCKENNA on behalf of themselves and all others similarly situated prays that the Defendants, TAXMASTER INC., TMIRS ENTERPRISES, LTD, TM GP SERVICES, LLC, and PATRICK R. COX, be cited to appear and answer herein; and that upon final trial and hearing have a declaratory judgment against Defendants, be awarded damages and attorneys fees, that the action be certified as a nationwide class action, that the below signed counsel be appointed as class counsel, and for such other and further relief, both at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

The Spencer Law Firm


/s/ Mark Wham
Mark Wham
TBN: 21239560, FBN: 8910
Gregory J. Finney
TBN: 24044430, FBN: 611329
Executive Plaza West
4635 Southwest Freeway, Suite 900
Houston, Texas 77027
Tel: 713-961-7770
Fax: 713-961-5336

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies a copy of the above and foregoing document(s) was served upon the following parties via the United States District Court's electronic transmission services and/or otherwise by First Class Mail on November 23, 2010

Matthew B. Probus
John Wesley Wauson
Wauson ♦ Probus
Comerica Bank Building
One Sugar Creek Center Blvd. Ste. 880
Sugar Land, Texas 77478


/s/ Mark Wham
Mark Wham