IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SANDRA DELL-WISE and § <br> RALPH J. MILLER, § <br> *on behalf of themselves, and all others* § <br> *similarly situated* § <br>     Plaintiffs, § <br> § <br> vs. § <br> § <br> TAXMASTERS, INC. § <br> TMIRS ENTERPRISES, LTD, § <br> TM GP SERVICES, LLC, § <br> and PATRICK R. COX, § <br>     Defendants. § | CIVIL ACTION NO.4:10-cv-03330 <br><br> JURY |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION WITH SANDRA DEL-WISE AND TO STAY HER CLAIMS PENDING ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

TO THE HONORABLE LYN HUGHES, U.S DISTRICT JUDGE:

COMES NOW Plaintiff, SANDRA DEL-WISE ( "Wise,") on behalf of herself and all others similarly situated, and file her Response to Defendants' Motion Compel Arbitration with Sandra Dell-Wise and to Stay her Claims Pending Arbitration and Memoranda of Law in Support Thereof, and would respectfully show:

**I.**

**<u>Relief Requested</u>**

1.    Plaintiff Sandra Dell-Wise ("Dell-Wise") asks the Court to deny Defendants' Motion to Compel Arbitration and Stay Her Claims Pending Arbitration.

II.

**Reasons Why Relief Should Be Granted**

2. The version of the TaxMasters contract entered with Dell-Wise contains an arbitration scheme which is procedurally and substantively unconscionable, and is unilateral in nature, and the contract does not contain a severability clause. The economic reality of the contract, as written, operates so as to deprive Dell-Wise (and others similarly situated) of any meaningful opportunity for relief as to their claims against Defendants.

III.

**The Dell-Wise Contract's Arbitration Scheme**

3. The version of the TaxMasters contract entered with Dell-Wise[1] purports to limit the client's total recovery (including attorneys' fees, costs, etc.) to the amount of money TaxMasters actually collected from the client; precludes the recovery of any exemplary damages; requires arbitration; precludes class arbitration; requires the client to arbitrate in Harris County, Texas; and requires the client to pay TaxMasters' portion of the arbitration fees. There is no severability clause. The arbitration scheme contained in the contract operates as an exculpatory clause, and is procedurally and substantively unconscionable. (A true and correct copy of the contract is attached hereto as Exhibit "A," and is incorporated herein by reference.)

IV.

**Procedural and Substantive Unconscionability**

4. Under Texas law, as with most jurisdictions, there are two types of unconscionability: substantive (fairness of the arbitration provision itself) and procedural (fairness

---

[1] Dell-Wise's investigation has revealed that TaxMasters used various forms of contract, containing differing terms related to arbitration and damages limitation.

of the circumstances surrounding adoption of the arbitration provision). *See, e.g., In re Luna*, 175 S.W.3d 315, 319 (Tex. App. – Houston [1st Dist.] 2004, orig. proceeding.) Both substantive and procedural unconscionability may be considered by a court in determining whether an arbitration clause is valid and enforceable. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) (orig. proceeding) ("courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision.") Although no single formula exists, proof of unconscionability begins with two broad questions: (1) how did the parties arrive at the terms in controversy; and (2) are there legitimate commercial reasons justifying the inclusion of the terms? *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493 498-99 (Tex. 1991) (Gonzalez, J., concurring.)

**SUBSTANTIVE UNCONSCIONABILITY**

5.      The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding) (quoted in *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding)). Under *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000), where a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. *See In re FirstMerit Bank*, N.A., 52 S.W.3d 749, 756-57 (Tex. 2001).

6.      In this instance, the contract itself resolves the inquiry, in that:

1. all costs of arbitration must be born by Plaintiffs, regardless of which party demands arbitration;

      2.  the economic realities of the contract preclude any viable recovery; and

      3.  the arbitration requirement is not mutual.

*See* Exhibit A.

    7.    Not only does the cost issue lead to the loss of rights identified in the U.S. Supreme Court in *Green Tree*, it also serves as an abrogation of the customer's statutory rights (for example, the right to bring a DTPA claim, which entitles the Plaintiffs to fees, costs and doubling or trebling damages). For example, in *Scott v. Singular Wireless* (cited above), the court considered the class action ban to be an effective abrogation of Washington's version of the DTPA. The *Scott v. Singular Wireless* Court noted that – in the context of consumer protection – customers act as private attorneys general in protecting the public's interest against unfair and deceptive practices. *Scott v. Singular Wireless*, 161 P.3d at 1006. Noting that the use of class actions are a critical piece of enforcement of consumer law, *Scott* held that denying customers the ability to bring class actions greatly reduces the customers ability to vindicate consumer rights. *Id*. The holding in the *Scott v. Singular Wireless* case also connected the dots between a ban on class actions and *exculpation*. First, the court observed that "Contract provisions that exculpate the author for wrongdoing, especially intentional wrongdoing, undermine the public good … [and that] … exculpation from any potential liability for unfair or deceptive acts or practices in commerce clearly violates public policy." *Id*. Finally the court observed that "… on its face, the class action waiver does not exculpate Cingular from anything; it merely channels dispute resolution into individual arbitration proceedings or small claims court. But in effect, this exculpates Cingular from legal liability for any wrong where the cost of pursuit outweighs the potential amount of recovery…" *Scott v. Singular Wireless*, 161 P.3d at 1007.

    8.    Another example of the unconscionable one-sidedness of TaxMasters' class

arbitration ban is this: under no circumstances would TaxMasters have occasion to bring a class action against its clients. This is because "…companies typically do not sue their customers in class-action lawsuits…" *Ting v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003).

9.  Further, the arbitration clause is illusory and unenforceable as a matter of law because it does not require TaxMasters to arbitrate its claims against its customer. Despite TaxMasters' claims to the contrary, a clear reading of the contract reveals that the arbitration scheme clause only, and unilaterally, requires the customer to arbitrate customers' claims. In *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. Tex. 2008), the Fifth Circuit noted that where one party purports to require another to submit its claims to arbitration, but accepts no such limitation itself, no enforceable arbitration agreement exists, due to the lack of mutuality of obligation. In support of this position, the Fifth Circuit in turn relied on the Texas Supreme Court in *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003). *J.M. Davidson, Inc. v. Webster*, in turn, cites to at least eight cases regarding how the lack of mutual obligation destroys the enforceability of an arbitration clause. *Id*. By way of further example, courts in the employment context have held arbitration clauses that lack bilateral obligation are illusory and unenforceable. *See Zamora v. Swift Transp. Corp.*, 2008 U.S. Dist. LEXIS 49990, *10 (W.D. Tex. June 3, 2008) (Under Texas law, the validity of a contract is dependant upon consideration or mutuality of obligation. *In re C & H News Co.*, 133 S.W.3d 642, 645-46 (Tex. App.—Corpus Christi, [13th Dist.] 2003). When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract. A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *Id.* The Fifth Circuit and the Texas Supreme Court have both held that if the defendant-employer retains the right to "unilaterally abolish or modify" the arbitration provision then the agreement to arbitrate is illusory and not binding upon the plaintiffs. *Morrison v. Amway Corp.*,

517 F.3d 248, 255 (5th Cir. 2008), (Citing *J.M. Davidson Inc. v. Webster*, 128 S.W.3d 223, 230 & n.2) (Tex. 2003); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006)).[1] The arbitration clause on page eight of TaxMasters' contract only requires the client to file arbitration of any disputes he or she has; it does not require TaxMasters to file arbitration, only going so far as to say that TaxMasters *may* demand arbitration.

PROCEDURAL UNCONSCIONABILITY

10. Complaints regarding procedural unconscionability are also properly the province of the courts. *See In re Weeks Marine, Inc.*, 242 S.W.3d 849, 2007 Tex. App. LEXIS 9867 (Tex. App. Houston 14th Dist. 2007), citing to *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, (1967). Procedural unconscionability is concerned with assent, and focuses on the facts surrounding the bargaining process. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 821 (Tex. App. – San Antonio 1996, no writ). Where the execution of a contract is procured by misrepresentation or concealment, such that there is no real assent to the agreement, assent may be negated and the binding nature of the contract avoided. *Self v. Miller*, 2001 Tex. App. LEXIS 6026 (Tex. App. – Houston [1st Dist.] Aug. 30, 2001), citing to *Amouri v Southwest Toyota, Inc.*, 20 S.W.3d 165, 169 (Tex. App. – Texarkana 2000, pet. denied), *Accord*, *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 908 (Tex. App. – Houston [14th Dist.] 2003). When TaxMasters contracts with new clients such as the Plaintiffs, TaxMasters knows it is misrepresenting the benefits of its services and the terms of its standard contract. Once the truth is discovered, its clients face an exculpatory arbitration scheme that prevents any economically viable claim from being brought. This scheme effectively exculpates

---

[1] For example in *Zamora v. Swift Transp. Corp.*, 2008 U.S. Dist. LEXIS 49990, n. 2, the court stated noted that "In Webster, the Supreme Court of Texas cited two federal courts of appeal in support of its finding that if a party retains a unilateral, unrestricted right to terminate the agreement, then the agreement to arbitrate is illusory. *Webster*, 128 S.W.3d at 231 n.2 (citing *Dumais v. Am. Golf C*orp., 299 F.3d 1216, 1219 (10th Cir. 2002), *Floss v. Ryan's Family Steak Houses, Inc*., 211 F.3d 306, 315-16 (6th Cir. 2000)."

TaxMasters from liability. Thus, under the facts of this case as set forth hereinabove, TaxMasters' misrepresentations are sufficient to invoke the doctrine of procedural unconscionability.

11. For all of the above and incorporated reasons, Plaintiff Dell-Wise on behalf of herself and the class asks for a declaration that the arbitration clause, inclusive of its additive restrictions, limitations, and requirements, be voided from the contract.

V.

**Facts Underlying Dell-Wise's Claim**

12. A review of the facts of Plaintiff Sandra Dell-Wise's situation demonstrates the unconscionability of TaxMasters' damages limitations scheme. Dell-Wise paid $2,550.00 to TaxMasters. Through advertising, she came to believe that TaxMasters could help solve her IRS and tax related problems. This help seemed to be linked to an IRS Offer in compromise program.

13. During the initial phone conference, the TaxMasters representative quickly developed a payment plan and acquired her payment information so that TaxMasters could "begin work on the tax problem immediately." Thereafter, despite Dell-Wise having paid $2,550.00 to TaxMasters, it seemed as though nothing was being done to resolve her tax issues. Dell-Wise provided all the requested documents to TaxMasters in September of 2008, shortly after she hired them. She called and emailed to follow up throughout September, October, November and December.

14. On or about January 7, 2009, the IRS contacted her directly and told her she had better file her tax returns immediately, or else her possessions and disability checks would be seized. The IRS agent also told her TaxMasters had never contacted them. Dell-Wise contacted TaxMasters that same day and was told that she "had not submitted her documents," that "no one had been assigned to her file," and that "all tax consultants were on vacation and couldn't help her." By

January 13th, TaxMasters acknowledged that they had received the documents she sent them in September. Dell-Wise fired TaxMasters on January 13th.

15. Despite her payment, Dell-Wise received *no* services, and therefore has a valid claim against TaxMasters. However, if she wished to complain of this in arbitration, the American Arbitration Association fees – not including arbitrator's hourly rates – would be $1850.00 for filing fees, proceeding fees and final fees (*See* Affidavit of Sandra Dell-Wise, attached as Exhibit "B" and incorporated herein by reference.)

16. In addition Dell-Wise would incur attorney's fees and costs. Air fare would cost approximately $458.00 round trip. Rental car for three days would cost around $132. Hotel rates for a three night stay in a hotel will cost approximately $315. General expenses while in Houston for the arbitration are estimated at approximately $50.00 per day. Thus, in addition to her (unrecoverable) attorneys' fees, the arbitration and damages limitation scheme in the contract would cost Dell-Wise in excess of $2,800.00, which amounts would be unrecoverable under the unconscionable arbitration scheme. (*See* Ex. "B".) Given the fact that, even if Dell-Wise did prevail, the economic reality would be that her attorneys' fees and costs and expenses involved in arbitration would far exceed the contractually limited $2,550.00 recovery under the contract's arbitration scheme.

## VI.

## PRAYER

Plaintiff Sandra Dell-Wise prays that Defendants' motion be denied in its entirety and for such further and other relief to which she may show herself justly entitled.

8

Respectfully submitted,

The Spencer Law Firm


/s/ Mark Wham
Mark Wham
TBN: 21239560, FBN: 8910
Gregory J. Finney
TBN: 24044430, FBN: 611329
Executive Plaza West
4635 Southwest Freeway, Suite 900
Houston, Texas 77027
Tel: 713-961-7770
Fax: 713-961-5336

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies a copy of the above and foregoing document(s) was served upon the following parties via the United States District Court's electronic transmission services and/or otherwise by First Class Mail on November 23, 2010

Matthew B. Probus
John Wesley Wauson
Wauson ♦ Probus
Comerica Bank Building
One Sugar Creek Center Blvd. Ste. 880
Sugar Land, Texas 77478


/s/ Mark Wham
Mark Wham