UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SANDRA DEL-WISE, RALPH J. MILLER, and PATRICK MCKENNA, on behalf of themselves, and all others similarly situated,<br>   Plaintiffs,<br><br>v.<br><br>TAXMASTERS, INC., TMIRS ENTERPRISES, LTD., TM GP SERVICES, LLC, and PATRICK R. COX,<br>   Defendants. | § § § § § § § § § § § § § §<br><br>CIVIL ACTION NO. 4:10-CV-03330 |

## AMENDED MEMORANDUM AND RECOMMENDATIONS

This breach of contract, deceptive trade practices and declaratory judgment action is before the court on defendants TaxMasters, Inc., TMIRS Enterprises, Ltd., TM GP Services, LLC, and Patrick R. Cox's motion to dismiss (Dkts. 8, 16) and motion to compel arbitration of plaintiff Sandra Del-Wise's claims (Dkt. 9). The court recommends that the motion to dismiss be granted in part and denied in part, and that the motion to compel be granted.

### Background[1]

*TaxMasters's Advertising, Sales, and Collection of Fees*[2]

TaxMasters is a tax resolution firm that offers various tax-related services to its customers. These services include stopping wage garnishments and property seizures, assisting customers pay

---

[1] The following facts are assumed as true for purposes of the motion to dismiss. The court will draw, as it must, all inferences arising from the facts in the light most favorable to the nonmoving party. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[2] Plaintiffs also complain of TaxMasters's sales compensation scheme and customer service department. However, it is unclear how these allegations fit into the deceptive trade practices and breach of contract claims.

back taxes, and settling tax debts with the IRS. TaxMasters advertises on network and cable television, representing that it will "get between" the customer and the IRS and solve the customer's tax problems. The advertisements invite customers to call TaxMasters for a free consultation with a "tax consultant." However, a customer who calls the number is connected to a salesperson who is not required to have any previous tax knowledge. The salesperson obtains the customer's payment information (either the customer's credit card or bank account number) and quotes a fee for the services provided. After talking to the salesperson, the customer is transferred to a "verifier," who verifies the fees quoted and payment information. After the call, TaxMasters charges the customer's credit card or debits the customer's bank account. TaxMasters also sends the customer a letter, IRS forms appointing TaxMasters as an agent, an "engagement guide," and an "engagement agreement." The letter instructs the customer to sign the engagement agreement and the IRS forms, and to return them to TaxMasters. If the customer refuses to sign the engagement agreement, TaxMasters attempts to collect any additional fees agreed to over the phone, and threatens customers with collection procedures, including suit in Harris County, Texas. TaxMasters also refuses to refund the fees already collected.

      Plaintiffs complain of contradictions between the salespersons' representations and the engagement agreement, as well as omissions of certain terms in the engagement agreement during the customer's initial telephone call. For example, the salesperson quotes the customer a fee (generally between $1,500 and $9,000) and determines whether it is to be paid at once or in installments. However, neither the salesperson nor the verifier tells the customer that the fee quoted is a nonrefundable minimum initial fee under the engagement agreement, and that the customer may be charged additional fees for certain work.

Moreover, the salesperson tells the customer that TaxMasters requires her credit card or bank account information in order to protect her assets, and will begin work immediately after obtaining such information. However, the engagement agreement does not require TaxMasters to begin work until all fees are paid.

*Sandra Del-Wise's Allegations*

In or around September 2008, Del-Wise called TaxMasters. A sales representative developed a payment plan and acquired her payment information so that TaxMasters could "begin work on the tax problem immediately." Del-Wise paid $2,550 to TaxMasters and provided all the requested documents (including a signed agreement for tax services) shortly after the call. She called and emailed to follow up in September, October, November, and December. On January 7, 2009, the IRS contacted Del-Wise and told her that her possessions and disability checks would be seized if she did not file her tax returns immediately. The IRS agent told Del-Wise that TaxMasters had not contacted them. Del-Wise contacted TaxMasters and was told that she "had not submitted her documents," that "no one had been assigned to her file," and that "all tax consultants were on vacation and couldn't help her." By January 13, 2009, TaxMasters acknowledged it had received the documents Del-Wise sent in September. Del-Wise terminated her relationship with TaxMasters the same day. TaxMasters did not perform any services for Del-Wise.

*Ralph J. Miller's Allegations*

Ralph J. Miller contacted TaxMasters on February 19, 2010 and agreed to a payment plan after talking with a sales representative and verifier. His credit card was billed the same day. Miller, however, did not sign the engagement agreement. On or about March 1, 2010, Miller began emailing TaxMasters to discontinue the services and demand a refund. He also followed up with phone calls.

On or about April 7, 2010, Miller wrote TaxMasters a letter referencing the emails and phone calls and again asked for a refund. The letter was returned unclaimed. Miller's credit card was charged a total of $1,750 ($583.33 on February 19, March 19, and April 19, 2010). Miller filed a complaint with the Better Business Bureau (BBB) on or about May 15, 2010. Ultimately, TaxMasters only refunded Miller one $583.33 installment.

*Patrick McKenna's Allegations*

On Thursday, July 15, 2010, McKenna called TaxMasters to settle his tax liability with the IRS. McKenna provided TaxMasters his bank account information, and was told that the deposit for services would be drawn to enable TaxMasters to start work immediately. McKenna agreed to a $1,000 downpayment and stipulated that the funds would be available for withdrawal the next week. The sales representative told McKenna that TaxMasters would submit an electronic check request that Friday, and that the request would not reach his bank until Monday or Tuesday. McKenna was then forwarded to a verifier who quickly read terms and conditions of working with TaxMasters.

That same evening, McKenna emailed TaxMasters to inform him that he was not going to work with the firm and rescinded any authorization to debit his account for the down-payment. On Saturday July 17, 2010, McKenna discovered that TaxMasters debited his account for $1,000, despite being told that the check request would not be processed until the next week. McKenna called the Quality Assurance department to complain. The representative told McKenna that he would review the recorded tapes of McKenna's transaction. After such review, McKenna was informed he would not be receiving a refund because he had agreed to the no refund policy during the verification process.

*Procedural History*

On September 16, 2010, plaintiffs Del-Wise, Miller, and McKenna brought this putative class action lawsuit on behalf of themselves and similarly situated plaintiffs.[3] Plaintiffs' first amended complaint asserts a claim under the Declaratory Judgment Act, seeking a declaration that "damages limitation scheme" of the engagement agreement's arbitration clause is unconscionable.[4] The amended complaint also brings class claims under the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.* (DTPA), or alternatively, under the other 49 states' laws prohibiting unfair and deceptive acts and practices.[5] Finally, the amended complaint asserts a class claim for breach of contract.[6]

On November 3, 2010, defendants filed their motion to compel arbitration of Del-Wise's claims,[7] and on December 3, 2010, defendants filed their motion to dismiss plaintiffs' first amended complaint.[8]

---

[3] Dkt. 1.

[4] Dkt. 10 ¶¶ 34–61. Plaintiffs' complaint actually seeks a declaration that the "damages limitation scheme" be stricken as unconscionable. *See* Dkt. 10, at 12 (Amended Complaint ¶ 34) ("Plaintiffs seek a declaration that the arbitration clause contained on page eight (8) of the contract be stricken, because it renders the contract substantively and procedurally unconscionable and operates as a de facto exculpatory clause.") The court has found no Fifth Circuit case law even mentioning a court declaring a contract provision as "stricken." Thus, the court will construe plaintiffs' declaratory judgment action as requesting a declaration that the "scheme" is unconscionable.

[5] Dkt. 10 ¶¶ 69–181.

[6] Dkt. 10 ¶¶ 182–85.

[7] Dkt. 9.

[8] Dkt. 16.

5

## Analysis

1.  **The motion to dismiss should be granted in part and denied in part.**[9]

    a.  **To the extent plaintiffs Miller and McKenna seek declaratory relief, their declaratory judgment actions should be dismissed.**

Plaintiffs' amended complaint does not specify which of the named plaintiffs seek declaratory relief. The declaratory judgment claim, asserted in various parts of the complaint, seeks a declaration that the "damages limitation scheme" in "the contract" is unconscionable and violative of the Texas DTPA. Plaintiffs claim that the scheme purports to: "(a) shift all costs of litigation, including all arbitration fees, to the customer; (b) bar any recovery in excess of the amount actually paid to TaxMasters; (c) preclude (by limitations on recovery) reimbursement of attorneys' fees; (d) preclude class arbitration (thereby eliminating the possibility of a viable claim); and (e) unconsciously [sic] require only the consumer, and not TaxMasters to arbitrate."[10] The complaint's description makes it clear that this "scheme" refers to the damages and arbitration provisions of the written engagement agreement.[11] However it is undisputed that neither Miller nor McKenna agreed to the engagement agreement.[12] Thus, any declaration as to the terms of the engagement agreement

---

[9] Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. At a scheduling conference on February 9, 2011, this court announced it would consider the challenge to subject matter jurisdiction when plaintiffs sought class certification, as the two issues are interrelated. Thus, this memorandum and recommendation only addresses defendants' motion on Rule 12(b)(6) grounds.

[10] Dkt. 10 ¶ 11.

[11] *See also* Dkt. 10 ¶ 12 ("The damage limitation scheme denies any viable means of redress to TaxMasters' customers. The economic reality is that pursuing a claim brought under the contract, *as written*, would cost far more to the customer than what he could ever recover.") (emphasis added).

[12] Plaintiff Del-Wise did sign such an agreement. However, for reasons explained in part 2 *infra*, her claims should be submitted to arbitration.

would be advisory. *Cf. Mayflower Transit, L.L.C. v. Troutt*, 332 F. Supp. 2d 971, 978 (W.D. Tex. 2004).

But even if the court construed the complaint to mean that Miller and McKenna seek a declaration that the "scheme" encompassed in their oral agreements with TaxMasters is invalid, those claims should still be dismissed. "Although a court may not dismiss a request for declaratory relief 'on the basis of whim or personal disinclination . . . the court may consider a variety of factors in determining whether to decide a declaratory judgment suit.'" *Sanijet Corp. v. Lexor International, Inc.*, No. 3:06-CV-1258-B, 2008 WL 2201451, at *2 (N.D. Tex. May 15, 2008) (quoting *Rowan Companies v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989)). "If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." *Id.* (citing *Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980); *Mandry v. Fina Oil & Chemical Co.*, 44 F.3d 1004, 1994 WL 733494, at *2 (5th Cir. 1994)). In addition to seeking declaratory relief, plaintiffs assert breach of contract and deceptive trade practices claims. In determining the merits of these latter claims, the court will address the validity of the "damages limitation schemes" in Miller and McKenna's contracts to determine TaxMasters's liability. The declaratory judgment claims add nothing to an analysis under breach of contract or applicable deceptive trade practices law, and should be dismissed.

        **b.**       **The motion to dismiss is denied to the extent defendants seek to dismiss the complaint's class allegations.**

Defendants argue that all of plaintiffs' class allegations should be dismissed as the complaint fails to assert allegations of numerosity or typicality, and is conclusory as to allegations of commonality, adequacy, and superiority. Although class action litigation may be halted by a Rule 12 motion to dismiss, *Floyd v. Bowen*, 833 F.2d 529, 534 (5th Cir. 1988) (citing *Miller v. Mackey*

*International, Inc.*, 452 F.2d 424, 429 (5th Cir. 1971)), defendants do not attack a specific claim. Rather, they ask the court to dismiss plaintiffs' class allegations as a whole—effectively moving this court to strike the class allegations under Rule 23(d)(1)(D). Since this type of motion requires an analysis of whether the substantive requirements of Rule 23 have been met, the motion is dismissed as premature. Defendants may re-assert this argument when plaintiffs move for class certification.

      **c.    The deceptive trade practices claims should not be dismissed.**

Defendants argue that Miller and McKenna's DTPA claims should be dismissed as no more than breach of contract claims. Although a DTPA claim cannot be based on a simple breach of contract, *Ashford Development, Inc. v. USLife Real Estate Services Corp.*, 661 S.W.2d 933, 935 (Tex. 1983), when a breach involves "deceptive or misleading acts," a DTPA claim may proceed. *Valley Nissan, Inc. v. Davila*, 133 S.W.3d 702, 709 (Tex. App.—Corpus Christi 2003, no pet.). Here, Miller and McKenna do not simply allege TaxMasters failed to perform. Rather, they state they were induced into entering a contract with TaxMasters on representations that they would be presented with a proposed solution to their tax problems by a "tax consultant," and that TaxMasters would begin work on their tax problems immediately. However, when Miller and McKenna called, instead of consulting with a "tax consultant," they were pitched TaxMasters's services by a salesperson and a verifier. Moreover, the engagement agreement sent later to Miller and McKenna indicated that TaxMasters did not actually begin work immediately, and does not consider itself to be obligated to do so until the initial fees are remitted in full. These acts suffice to state a "misleading act" accompanying Miller and McKenna's breach of contract claim. The DTPA claims should not be dismissed.

### d. The breach of contract claims should not be dismissed.

Defendants argue that Miller and McKenna's breach of contract claims should be dismissed because they did not sign the written engagement agreement. However under Texas law, oral contracts for services are generally enforceable. *See, e.g.*, *Critchfield v. Smith*, 151 S.W.3d 255, 233 (Tex. App.—Tyler 2004, pet. denied). Here, Miller and McKenna allege they called TaxMasters and provided payment information (and subsequently paid TaxMasters) for services. Thus, Miller and McKenna have pled sufficient facts for the existence of an oral contract. Miller and McKenna's breach of contract claims should not be dismissed.

### 2. The motion to compel arbitration of Del-Wise's claims should be granted because the arbitration provision is neither substantively nor procedurally unconscionable.

Defendants contend that Plaintiff Del-Wise's claims should be sent to arbitration pursuant to the terms of the engagement agreement she signed. Del-Wise responds that the arbitration clause is unconscionable, and therefore unenforceable.

The Federal Arbitration Act provides that a written contract provision "to settle by arbitration a controversy thereafter arising out of such contract" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

> That is, as a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts. Therefore, "generally applicable contract defenses, such as fraud, duress, *or unconscionability,* may be applied to invalidate arbitration agreements without contravening § 2."

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)) (emphasis in original); *see AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).[13]

### a. Substantive Unconscionability

Del-Wise advances several arguments asserting the arbitration provision is substantively unconscionable. In Texas,[14] the general test for unconscionability is "whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001). The doctrine is meant to prevent "oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power." *Id.*

### i. Class Arbitration Ban

Del-Wise argues that the arbitration provision is unconscionable because its class arbitration ban effectively abrogates her ability to bring a claim under the DTPA. Del-Wise asserts that the ban effectively exculpates TaxMasters from potential liability for wrongs "where the cost of pursuit outweighs the potential amount of recovery."[15] The Fifth Circuit has previously rejected this very

---

[13]Before analyzing defenses to an arbitration provision courts must determine whether the claim asserted falls within the arbitration provision. *See In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005). Here, it is undisputed that the clause covers the claims asserted. The issue presented in this case is the arbitration clause's validity.

[14]Defendants briefed the choice of law issue, arguing that Texas law applies in determining the validity of the arbitration clause. Del-Wise did not brief this issue, although she predominately cites Texas law. Since the parties appear to agree on this issue, the court assumes without deciding that Texas law applies.

[15]Dkt. 13 ¶ 7 (quoting *Scott v. Cingular Wireless*, 161 P3d 1000, 1007 (Wash. 2007)).

same argument. *See Iberia*, 379 F.3d at 174 (considering federal and Louisiana policy favoring arbitration); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (arbitration clause prohibiting collective action not unconscionable under Texas law); *Prudential Securities Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (arbitration is favored under federal and Texas law). "As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition,' *see* [*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)] (internal quotation marks omitted), characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." *Iberia*, 379 F.3d at 174; *see also Concepcion*, 131 S. Ct. at 1753 (holding that the FAA preempted California's rule that certain class action waivers in consumer contracts of adhesion are unconscionable). Thus, the class arbitration ban does not render the arbitration provision unconscionable.

### ii. Lack of Consideration

Del-Wise next asserts that the arbitration provision is unconscionable because it lacks mutuality—that is, Del-Wise is required to arbitrate her claims, but TaxMasters is not required to arbitrate its claims.[16] But even assuming Del-Wise's interpretation of the contract is correct, arbitration provisions lacking mutuality are not necessarily unconscionable. *See FirstMerit Bank*, 52 S.W.3d at 757–58 (holding the arbitration provision not unconscionable, where the bank retained

---

[16]Del-Wise points to the first paragraph in the arbitration section of the contract, which provides that "Client agrees that any and all claims . . . that Client has" regarding the contract "shall be settled by binding arbitration." However, the third paragraph provides "Either party may demand arbitration by filing" a written demand with the American Arbitration Association. Defendants disagree, interpreting the last paragraph of the arbitration provision to require TaxMasters to submit its claims to arbitration. The court need not address this interpretation issue, because even if Del-Wise's interpretation is correct, her argument still fails.

its ability to seek judicial relief to protect its security interest). Rather, "when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (citing *FirstMerit Bank*, 52 S.W.3d at 757); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).[17] Here, the agreement to arbitrate is part of a larger "engagement agreement," setting forth, among other things, the services TaxMasters promised to provide, and the fees Del-Wise promised to pay. Thus, assuming *arguendo* that the arbitration provision does not require TaxMasters to arbitrate its claims, the provision is not unconscionable for lack of mutuality.[18]

### iii. Cost-Prohibitive Arbitration Provision

Del-Wise also avers that because the arbitration agreement requires her to bear all costs of arbitration, and the contract limits the damages she may recover, it precludes her from vindicating her rights under the DTPA and contract law. In *Green Tree Financial Corp. v. Randolph*, the Supreme Court recognized that "even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." 531 U.S. 79, 90 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Moreover, the Court concluded that "where . . . a party seeks to invalidate an arbitration agreement

---

[17]The cases cited by Del-Wise—*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) and *In re C & H News Co.*, 133 S.W.3d 642 (Tex. App.—Corpus Christi 2003, no pet.)—are distinguishable, as they only refer to stand-alone arbitration agreements. *See AdvancePCS*, 172 S.W.3d at 607.

[18]To be sure, Del-Wise also cites *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008) for the proposition that the arbitration clause is illusory. In that case, a distributorship agreement was held illusory because Amway could unilaterally amend the terms of the agreement and the contract did not preclude retrospective amendments. *Morrison* is inapposite here because the terms of the engagement agreement do not give TaxMasters a unilateral right to amend the contract.

on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. The Court did not specify how detailed the opponent's showing must be before the proponent of arbitration must present contrary evidence.

Despite the Supreme Court's silence on this issue, prevailing case law indicates Del-Wise has not met her burden to show that the costs of arbitration would be prohibitively expensive.[19] The Fifth Circuit has noted in passing that a plaintiff has the burden to provide "some individualized evidence that [she] likely will face prohibitive costs in the arbitration at issue and that [she is] financially incapable of meeting those costs." *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 300 (5th Cir. 2004) (quoting *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 557 (7th Cir. 2003)). As a part of this analysis, the plaintiff must present evidence that the costs of arbitration effectively deny her legal recourse, when compared to the costs of proceeding in a court of law. *See, e.g., James v. McDonald's Corp.*, 417 F.3d 672, 679–80 (7th Cir. 2005) (noting the plaintiff provided no evidence regarding the comparative expenses of arbitration versus litigation); *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 556 (4th Cir. 2001).

Here, the only evidence Del-Wise submitted was an affidavit stating that, based on some online research she conducted, the following expenses will likely be incurred: $1,850 in arbitration fees, $458 for airfare, $132 for a rental car, $315 for hotel accommodations, $50 per day for general

---

[19]Although *Green Tree* involved a lawsuit under the federal Truth in Lending Act, this analysis assumes without deciding that this defense is available for state common law and statutory claims such as breach of contract and DTPA violations. *See American Heritage Life Insurance Company v. Orr*, 294 F.3d 702 (2002) (reviewing a *Green Tree* defense in a fraudulent misrepresentation and conspiracy case); *cf. James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005) ("It remains unclear whether the rationale of *Green Tree* applies to situations that do not involve the assertion of federal statutory rights.").

expenses while in Houston for the arbitration, and unspecified attorneys fees.[20] Summing up these figures, Del-Wise claims she would incur over $2,800 in expenses—well above the $2,550 damage cap set out in the contract's damages section. Del-Wise supplemented this affidavit stating she is "on disability" and that her "total monthly income is $900 per month."[21]

Preliminarily, if Del-Wise proceeded to trial, she would incur all of the above expenses except the arbitration fees. Thus, the expenses not unique to arbitration do not support her *Green Tree* defense.

Regarding Del-Wise's arbitration fees, her estimate of $1,850 in arbitration fees is unfounded. The Supplementary Procedures for Consumer-Related Disputes provides that for claims for less than $10,000, the consumer is obligated to pay no more than $125 in arbitrator's fees, and is not required to pay any administrative fees. *See* Supplementary Procedures for Consumer-Related Disputes § C-8, *available at* http://www.adr.org/sp.asp?id=22014#C8 (last visited Feb. 10, 2011). *See Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 835 (S.D. Miss. 2001) (dismissing defendant's claim that he would bear his own expenses in accordance with the arbitration agreement, where the agreement provided that the Code of Procedure of the National Arbitration Forum (NAF) applied, and NAF rules set a "Fee Schedule" for filing and administrative fees).

Moreover, there is no evidence that Del-Wise sought to invoke AAA's fee waiver procedure. *See American Heritage Life Insurance v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002) (noting that AAA's Commercial Arbitration Rules provide fee-paying relief); *Dobbins v. Hawk's Enterprises*, 198 F.3d 715, 717 (8th Cir. 1999) (noting plaintiff never fully explored AAA's fee waiver procedure); *see also*

---

[20]Dkt. 13 ¶ 16.

[21]Dkt. 20-1.

Commercial Arbitration Rules R-49 ("The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."), *available at* http://www.adr.org/sp.asp?id=22440#R49 (last visited Feb. 10, 2011); Administrative Fee Waivers and Pro Bono Arbitrators Services, American Arbitration Association, http://www.adr.org/sp.asp?id=22040 (last visited Feb. 10, 2011). Finally, Del-Wise has not shown how her financial status would affect this analysis. *See James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005). Considering the bare allegations in her affidavit and the lack of other probative evidence, Del-Wise has failed to sufficiently meet her burden of showing the likelihood of incurring expenses that would deny her a forum to hear her claims.

Del-Wise also argues—in line with the Sixth Circuit's approach to the *Green Tree* defense—that regardless of whether the arbitration costs prohibit herself from bringing her claim, the provision makes arbitration cost-prohibitive for a class of similarly situated plaintiffs. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir. 2003) ("Our approach differs from the case-by-case approach advocated in *Bradford* by looking to the possible 'chilling effect' of the cost-splitting provision on similarly situated potential litigants, as opposed to its effect merely on the actual plaintiff in any given case."). However, Del-Wise has presented no evidence on this point, and thus has failed to meet her burden under *Green Tree*.

In sum, Del-Wise has failed to show that the arbitration clause is substantively unconscionable.

    **b.    Procedural Unconscionablility**

Del-Wise asserts that the arbitration clause should be voided because TaxMasters knowingly misrepresents the benefits of its services, and then seeks to avoid liability through its "exculpatory

arbitration scheme."[22] Challenges to the validity of the whole contract (as opposed to the arbitration provision itself) are not proper to review under 9 U.S.C. § 2. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) ("a party's challenge . . . to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate"); *FirstMerit Bank*, 52 S.W.3d at 758. Del-Wise's argument essentially asserts the defense of fraud in the inducement as to the entire contract. She makes no allegations that she was induced by material misrepresentations *regarding the arbitration provision* and thus suffered injury. *See FirstMerit Bank*, 52 S.W.3d at 758 (discussing plaintiffs' fraud defense regarding an arbitration addendum). Del-Wise's argument is for the arbitrator to decide, and is not a basis to deny defendants' motion to compel arbitration.

Del-Wise has failed to show the arbitration provision is substantively or procedurally unconscionable. Defendants' motion to compel arbitration should be granted.

## Conclusion

For the foregoing reasons, the court recommends that defendants' motion to compel arbitration of Del-Wise's claims be granted. The court also recommends that defendants' motion to dismiss be granted as to Miller and McKenna's declaratory judgment claims, and denied as to their class allegations, deceptive trade practices claims, and breach of contract claims. Defendants' challenge to this court's subject matter jurisdiction will be addressed when plaintiffs seek class certification.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. Fed. R. Civ. P. 72.

---

[22] Dkt. 13 ¶ 10.

Signed at Houston, Texas on June 13, 2011.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge